Johnny Rayford **WILLIAMS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 24456.

United States Court of Appeals Fifth Circuit.

July 31, 1967.

Harry L. Reed, Houston, Tex., for appellant.

Jacob F. Bumstead, Asst. U. S. Atty., Beaumont, Tex., Wm. Wayne Justice, U. S. Atty., for appellee.

Before WISDOM and GODBOLD, Circuit Judges, and McRAE, District Judge.

McRAE, District Judge:

On the morning of February 1, 1963, Johnny Rayford Williams was under surveillance by several federal postal inspectors because he was suspected of stealing United States Treasury checks from the mails. The inspectors followed Williams from 6:30 A.M., when he left his house, until approximately 8:30 A.M., when he pulled his car over to the curb in front of a drug store. Williams then called to a passing school child and, after talking to the child for a moment, produced what appeared to be a magazine, which he opened up and placed on the top of the car. The youth wrote something in the magazine and departed. The postal inspector who related this story at the trial could not say what, if anything, was inside the magazine.

Williams then got back into his car, went a few blocks, and again stopped his car. This time the postal inspectors pulled up behind Williams, got out of their car, and identified themselves to him. Williams got out of his car, and after a few moments, ran. One postal inspector ran after Williams, but was unable to catch him. A subsequent search of the neighborhood failed to uncover Williams.

The car abandoned by Williams was impounded by the Houston City Police, because it was blocking traffic, and was removed to B & J Auto Storage. A search, without a warrant, was made by Mr. Lawson, one of the investigating postal inspectors, but not one of the inspectors who saw Williams talk to the school child and run away from his car. The search uncovered a book of personalized checks in the trunk bearing the name of Mr. and Mrs. Murphy R. Milligan. Subsequently, Williams was indicted for uttering and publishing as true a forged treasury check payable to Murphy R. Milligan. The first trial ended when the jury could not reach a verdict, and a mistrial was declared. At the second trial, the government put Mr. Milligan on the stand; he testified that he had ordered additional checks from the bank about the time he should have received the treasury check identified in the indictment. The government then introduced the book of personalized checks over the objection of defense counsel, in order to connect Williams with the stolen treasury check. Further, Mrs. C. L. Thomas, the wife of the proprietor of the store in which the check was cashed, testified that Williams was the person for whom she had cashed the check. We are called upon to decide whether the checkbook and the testimony of Mrs. Thomas should have been excluded because they were the product of an illegal search.

The decisional law as announced by the Supreme Court allows for a warrantless search of an automobile if there is probable cause to believe that "the contents of the automobile offend against the law." Carroll v. United States, 267 U.S. 132, 159, 45 S.Ct. 280, 287, 69 L.Ed. 543, 39 A.L.R. 790 (1925). But Carroll went on to point out that "where the securing of a warrant is reasonably practicable, it must be used." Id. at 156, 45 S.Ct. at 286. Although the commanding tone of this language has been mellowed

by United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950), wherein the Court stated that "[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable," id. at 66, 70 S.Ct. at 435, the practicability, under the circumstances, of submitting evidence which may justify a search to a magistrate, for his independent determination, is a significant factor. Rent v. United States, 209 F.2d 893 (5th Cir. 1954). It is the view of this Court, that under "the facts and circumstances—the total atmosphere of the case," Rabinowitz v. United States, 339 U.S. 56, 66, 70 S.Ct. 430, 435 (1950), the search was unreasonable, requiring the exclusion of the checkbook.

■ We think it is appropriate to point out that in reaching this result, we do not pass on the existence of probable cause as a justification for the warrantless search. As the Supreme Court said in Preston v. United States, 376 U.S. 364, 368, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964), the existence of probable cause "does not decide the question of the reasonableness of a search at a later time and at another place." Moreover, even where probable cause exists, a warrantless search is forbidden unless made incident to a lawful arrest, Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925), or justified by exceptional circumstances, such as a significant possibility of removal or destruction of the object of the search. Smith v. United States, 118 U.S.App.D.C. 133, 335 F.2d 270 (1964).

■■ It is not disputed that the car was legally impounded by the Houston City Police, thus possibly justifying a search of the automobile, at least, for the purposes of identification and self-protection by the city police, Cooper v. State of California, 386 U.S. 58, 61, 87 S. Ct. 788, 791, 17 L.Ed.2d 730, 733 (1967). But this does not give the postal inspectors the authority to search the automobile without a warrant under the circumstances of this case. The search was not incident to any arrest, and it did not re-late to the nature and purpose of the custody of the impounded car by the Houston City Police. This is not a case similar to *Cooper,* in which the search was held reasonable because the search of the car was closely related to the reason Cooper had been arrested, the reason the car had been impounded, and the reason it had been retained. Id. 386 U. S. at 60, 87 S.Ct. at 790, 17 L.Ed.2d at 733. In the present case, the car was in the custody of the police; thus no danger existed that the postal inspectors might be attacked with weapons secreted in the car. Likewise, there was no danger that the car might be removed from the jurisdiction. See Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285 (1925). The only possible justification for the search of the car upon its arrival at the garage was that the suspect Williams was still at large and might have been able to destroy the evidence in the car before a warrant could have been issued. See Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883 (1964). On the facts, as presented to the Court, we are not prepared to justify the warrantless search on this ground. Although it might be that the garage did not have or take sufficient security measures to safeguard against the possible destruction of the evidence, this does not appear as a fact before this Court. It is the view of this Court that when the fruits of a warrantless search are introduced into evidence, the burden is upon the government to come within the exceptions to the warrant requirement. United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951). The government has not done so in this case.

We are next faced with the extent to which this illegal search tainted other evidence introduced at the trial. More specifically, the testimony of Mrs. C. L. Thomas, who identified Williams as the person who cashed the check in her store, is challenged as inadmissible fruit of the illegal search under the teachings of Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426 (1920), and its progeny.

A short account of the facts leading up to the indictment is necessary for a determination of the nexus between the illegal search and Mrs. Thomas' testimony. The illegal search which uncovered the checkbook took place on February 1, 1963. The surveillance which ended in the search was carried on because Williams was under a general suspicion for theft of government checks. From the testimony of the officers it is clear that he was not under suspicion for the theft of Milligan's check. Further, the testimony indicates that it was not until after the book of checks was discovered that the postal inspectors went to Mrs. Thomas for the purpose of having her attempt to identify Williams. Thus, it appears that but for the discovery of the checkbook during the illegal search, Mrs. Thomas would not have identified Williams.

■ The real significance, however, lies not in what would or would not have happened but for the checkbook, but what actually did happen. It is clear that the checkbook linked Williams to a stolen check payable to Murphy Milligan and cashed by Mrs. Thomas. It was not until after the checkbook was discovered in Williams' car that he was under suspicion for the offense charged in the indictment. More significantly, Mrs. Thomas did not identify Williams until the postal authorities came to her, over two years after the check was cashed, with a series of pictures, one of which was of Williams, from which a positive identification was made. Thus, it is apparent that the identification of Williams by Mrs. Thomas was an indirect product of the illegal search and not a product of the independent activity of the postal inspectors. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182 (1920). As such, Mrs. Thomas' testimony linking Williams to the offense charged is inadmissible.

A lengthy discussion of the cases dealing in this area is not necessary because the significance of the nexus between an illegal search and challenged evidence is one of common sense, see Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939), to be considered under the facts and circumstances of the particular case. Suffice it to say that the road from the illegal search to the testimony of Mrs. Thomas, although a little long, was not a winding one. United States v. Tane, 329 F.2d 848 (2d Cir. 1964).

■ Having reached this juncture, we must now decide whether the indictment should be dismissed or whether the possibility of a new trial should be left open. Williams was initially tried on this one count indictment in June of 1965. A mistrial resulted when the jury was unable to reach a verdict. A second trial was conducted in September of 1965 and a guilty verdict was rendered. This appeal followed. Williams has been confined since the trial. In view of this history and the great unlikelihood of the government's being able to produce untainted incriminatory evidence, and in view of our discussion of the events leading up to the indictment, it is the judgment of this Court that the interests of justice will best be served by remanding the case with directions to dismiss the indictment. We wish to add, however, that this result is not a repudiation of Paternostro v. United States, 311 F.2d 298 (5th Cir. 1962), which remanded the case for a new trial, if the trial judge deemed it appropriate, on the "bare possibility" that the government might produce sufficient corroborating evidence. Rather, under the circumstances peculiar to this case, a dismissal of the indictment is appropriate.

Reversed and remanded.