Robert GISSENDANNER, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Respondent-Appellee.

Samuel CHOICE, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Respondent-Appellee.

John Forest SMALLEY, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, Respondent-Appellee.

Nos. 72–1311, 72–1565, 72–1566.

United States Court of Appeals,
Fifth Circuit.

July 17, 1973.

Fleet & Stone, J. Leonard Fleet, Hollywood, Fla., for petitioners-appellants.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Nelson E. Bailey, Asst. Atty. Gen., West Palm Beach, Fla., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, TUTTLE and INGRAHAM, Circuit Judges.

JOHN R. BROWN, Chief Judge:

In this consolidated appeal from the denial of federal habeas corpus relief, the petitioners (all three of whom were convicted in a Florida court on a charge of rape) contend that the decision was wrong for these reasons: (i) a car belonging to petitioner Smalley was illegally searched without a warrant or his consent with the damaging fruits being introduced against all, (ii) a statement made by petitioner Gissendanner at the time of his arrest was involuntary and, therefore, should have been suppressed, (iii) Choice and Smalley were unfairly incriminated by the hearsay testimony of a police officer who related Gissendanner's statement "that he was wanted in Broward County for an alleged rape, that he was with the other fellows but that he didn't do anything", (iv) the lineup identification of Choice and Gissendanner was the "fruit of the poisonous tree" in that it was made following the coerced and ultimately suppressed confession of Smalley in which he named his co-participants in the crime, (v) all three defendants were insufficiently

identified by the prosecutrix, (vi) the trial court's instruction unfairly placed the burden of proof of alibi on the defendants and, finally (vii) the defendants, all Negroes accused of raping a white woman, were tried in an atmosphere of prejudice.

■ After oral argument and a careful review of the record as to each point, we conclude that each contention is lacking in merit. Except as to two matters, all are adequately discussed in the identical orders of the District Court involved [1] which we attach as an appendix. As the appendix reflects, there were, on the state court trial, substantial conflicts concerning most of these incidents, e. g., the search of the car, the interrogation of Gissendanner on the highway, etc. Credibility choices had to be, and were made. The state court record fully satisfied the requirements of 28 U.S.C.A. § 2254. The District Court was right in rejecting these.

■ Only two matters need be further discussed. First, petitioners are correct in assertion (vi) that the trial court's charge improperly placed the burden of proof of the alibi on the defendants, as we held in Smith v. Smith, 5 Cir., 1971, 454 F.2d 572. However, the instant case was tried in 1966, some five years before the decision in Smith v. Smith, supra. We have subsequently held that decision does not apply to trials conducted before December 14, 1968. Bassett v. Smith, 5 Cir., 1972, 464 F.2d 347.

The second point (iv) requiring our attention is petitioners Gissendanner and Choice claim that their identification in the lineup was—to once again put scars on an overworked cliche—the "fruit of the poisonous tree" since their identities were learned initially through the ultimately suppressed confession of Smalley. Thus, they claim that had he not implicated them, they would not have been in the lineup and their participation in the crime uncovered.

---

1. The late Judge Ted Cabot heard the petitions of Choice and Smalley. The Gissendanner petition was decided by Judge Peter T. Fay.

At first blush, this is a beguiling argument which might seem to flow from the Supreme Court's holding in Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In that case, the Court stated:

> Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the "fruit" of official illegality than the more common tangible fruits of the unwarranted intrusion.

371 U.S. at 485–486, 83 S.Ct. at 416, 9 L.Ed.2d at 454 (footnote by the Court omitted).

■ The holding in *Wong Sun* stemmed in part from an earlier holding in Silverthorne Lumber Co. v. United States, 1919, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. The Court's rationale for excluding tainted evidence was:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all. Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed.

251 U.S. at 392, 40 S.Ct. at 183, 64 L. Ed. at 321. See also Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (*Nardone II*).[2] The basic doctrine then, is that evidence which is obtained illegally may not be used against the person from whom it is obtained. It is not only the *physical* or tangible evidence which is excluded, but also the *verbal* or intangible. *Wong Sun, supra*.

The basic exclusionary rule has been applied many times. In Williams v. United States, 5 Cir., 1967, 382 F.2d 48, this Court reversed a conviction for forgery of a government check where the defendant's car had been illegally searched, producing evidence that led to the store proprietor who had cashed the check. The defendant had not originally been under surveillance for the suspected theft and forgery of the check. It was only through the constitutionally impermissible search of the defendant's police-impounded automobile that the evidence was uncovered which led to the shopkeeper's identification of the defendant. The Court found the identification to be tainted because it was "apparent that the identification of [the defendant] by [the storekeeper] was an indirect product of the illegal search and not a product of independent activity of the postal inspectors," 382 F.2d at 51, [citing *Wong Sun* and *Silverthorne*].

In a recent decision, United States v. Marder, 5 Cir., 1973, 474 F.2d 1192, this

2. In *Nardone II*, which cited *Nardone I*, (the first appeal of the case, in 1937, reported at 302 U.S. 379, 58 S.Ct. 275, 82 L.Ed. 314) the Court dealt with the question of evidence obtained through the use of wiretaps and used derivatively:

> We are here dealing with specific prohibition of particular methods in obtaining evidence. The result of the holding below is to reduce the scope of § 605 to exclusion of the exact words heard through forbidden interceptions, allowing these interceptions every derivative use that they may serve. Such a reading of § 605 would largely stultify the policy which compelled our decision in Nardone v. United States, supra. That decision was not the product

of a merely meticulous reading of technical language. It was the translation into practicality of broad considerations of morality and public well-being. This Court found that the logically relevant proof which Congress had outlawed, it outlawed because "inconsistent with ethical standards and destructive of personal liberty." 302 U.S. 379, 384, 58 S.Ct. 275, 277, 82 L.Ed. 314, 317. To forbid the direct use of methods thus characterized but to put no curb on their full indirect use would only invite the very methods deemed "inconsistent with ethical standards and destructive of personal liberty."

308 U.S. at 340, 60 S.Ct. at 267, 84 L. Ed. at 311.

Court reaffirmed the general principle that if "the identity of a government witness and his relationship to the defendant are revealed because of an illegal search and seizure, the testimony of such witness must be excluded. Williams v. United States, 382 F.2d 48 (1967)." The issue there was whether a witness who could not have been located but for an illegal wiretap should be prohibited from testifying since his identity was the fruit of the poisonous tree. The Court affirmed the conviction on the ground that the evidence given by the witness discovered through an illegal search (the wiretap) had a "de minimis bearing on the question of guilt or innocence when viewed in light of the overwhelming evidence of guilt from other sources." 474 F.2d at 1197.

▇ But, beguiling as it is, we resist the temptations of the serpent of another tree, not only to eat, but swallow the fruit or the fruit of the fruit, or the theory of the fruit, poisoned, palatable or forbidden. For these cases do not compel a holding that the identification of Choice and Gissendanner was the impermissible product of an illegal confession. In arriving at this result, we note two critical things which make it a non-*Wong Sun* case. First, Smalley's confession was suppressed and was never introduced into evidence against *any* defendant. The thrust of *Wong Sun* and *Silverthorne* is basically a rule of evidence being used on the trial to obtain conviction. It is fundamental that all *relevant* evidence is admissible unless excluded on some accepted ground. I Wigmore on Evidence, § 10 at page 293 (3d Ed. 1940); McCormick on Evidence, § 151 at page 314 (1954). While Smalley's confession was clearly a statement of probative value, it was suppressed at the outset on constitutional grounds[3] and hence was never a part of the proof against any of the accused. For whatever reason, the fact remains that the confession was excluded from evidence and in no way was it used against Smalley, Choice or Gissendanner at the trial.

Since they do not complain that the poisoned fruit was set before the jury for its consumption, what Choice and Gissendanner seek in effect is an *immunity from prosecution* because the first finger was put on them by reason of the violation of a third party's constitutional rights. They claim the state should have arrived at their identities through some independent source other than the confession. The suggestion that the policeman's mind must be the *tabula rasa* is a fanciful one at best. The contention would mean that once the authorities have obtained the names of the others involved, not knowing that months or years later the source will prove to be invalid as to someone else, they would have to ignore this information and seek it from another independent source. Added to the problem would be the likelihood that if such a valid independent source were subsequently discovered, the coactors thus revealed could always assert that since the *first* source was "the poisonous tree" *all* subsequently discovered sources of the same names would be tainted. The effect of such a holding would be, of course, either to confer an immunity from prosecution on every person whose name was thus initially revealed or to impose on the prosecution not just the burden of establishing beyond a reasonable doubt the identity and

---

3. The record, state and federal, fails to indicate on what specific grounds the confession was suppressed, nor are the briefs any more revealing. On oral argument we were informed without contradiction that the confession was suppressed in the state proceedings because of a failure to give the warnings required by Miranda v. Arizona, 1967, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. *Miranda's* basic premise, that the accused must be informed of his constitutional right to counsel and privilege against self-incrimination, affords no protection to Choice and Gissendanner. The admission of evidence against these appellants which may have been the result of Smalley's inadmissible confession in no way encroaches their right to counsel or privilege against self-incrimination. The exclusionary rule does not provide a basis for asserting these rights in this context.

culpability of those charged, but to prove as a part of the prosecution that the identification had come from independent sources without taint from the invalid initial revelation. Choice and Gissendanner cite us no cases where any court has adopted this palimpsest theory, elongating an essentially evidentiary rule into a new form of constitutional immunity.

In support of this theory these appellants urge that to hold otherwise is to free the police from constitutional shackles which protect the citizen from illegal arrests, unconstitutional searches, the extortion or coercion of confessions, and the like. In short, they seek a new application of the exclusionary rule contending that unless all is excluded, policemen who are constitutionally derelict would profit by their excesses and to deter such conduct society must bear the high cost of the guilty going free.

█ Certainly, before any consequences so destructive of society's right to be protected from violent crimes is to be set in motion, there would have to be a respectable showing that (i) it was *solely* through such invalid source that identity was ascertained and (ii) there was no likelihood that it would have subsequently been discovered through other police efforts. In summary, there is no showing on this record that, whatever violations might have occurred as to Smalley, law officers knowingly employed illegal methods to extract from Smalley the names of the other cocriminals or that in the normal police work investigation their identities would not have turned up.[4]

There is a second critical distinction between this case and those cases stressed by these appellants. The vital element of *standing* in *Wong Sun, Silverthorne, Williams*, and the others is not present here. To put it simply, what right of the petitioners Choice and Gissendanner was violated? It was not they whose confessions were illegally garnered. It was not they against whom some illegal evidence was used in court. This factor comes into a sharper focus since there has been no contention that the actual lineup which followed the implicating Smalley statement was conducted without all the constitutional sanitation required by the cases of Coleman v. Alabama, 1970, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387; United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L. Ed.2d 1199; and others. Thus, the lineup itself is not the basis for the claim of constitutional impropriety. Rather, it is

---

4. In United States v. Resnick, 5 Cir., 1973, 483 F.2d 354, we pointed out that independent leads could attenuate the taint:

"Appellant next contends that * * * the identity of the witness was the fruit of the poisonous tree.[4]

Of course a witness' identity may be derived solely or principally from illegally obtained evidence and warrant a court in disallowing his testimony. Williams v. United States, 5 Cir., 1967, 382 F.2d 48, 51. See Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319; Wong Sun v. United States, 1963, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441; Harrison v. United States, 1968, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047; United States v. Whelan, 5 Cir., 1972, 463 F.2d 1093. But the taint of the unlawful search may be removed if there are independently sufficient 'leads' by which the government may discover the identity. See Nardone v. United States, 1939, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307."

[4 The point was preserved in this way:

THE COURT: Mr. Russ, out of the presence of the jury, my recollection was that there was something you wanted to take up regarding witnesses.

MR. RUSS: Well, I wanted to sort of challenge the cleanliness of some of the newly found witnesses, Your Honor. There is a suspicion that they are tainted by the—Put it this way: that because of a dirty search, some of the dust has fallen off of them and consequently they fall in the area of rotten apples and poisoned fruit, or something like that.

THE COURT: Sounds like Chief Judge Brown.]

483 F.2d 356, 357.

that without the Smalley confession they would never have been in the lineup.

 In a recent decision of this Court, United States v. Maryland, 5 Cir., 1973, 479 F.2d 566 [(on rehearing)], the Court remarked that one must have been a victim of the illegal action in order to challenge it. In the context of a search and seizure question we stated he may not be merely one "who claims prejudice only through the use of evidence gathered as a consequence of a search and seizure directed against someone else," citing the case of Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L. Ed.2d 697.[5] We thus agree that no denial of any constitutional right of these two appellants has been shown on this record. They are in no position to assert the invalidity of the Smalley confession because it was not introduced into evidence against them.[6] The tree might

5. We have applied this in a number of cases: Dryden v. United States, 5 Cir., 1968, 391 F.2d 214 (Appellant made self-incriminating statements in conversation over telephone line where subscriber had not consented to wiretap—Court held Appellant had no standing to complain of violation of subscriber's rights) ; United States v. Coley, 5 Cir., 1971, 441 F.2d 1299 (Appellant's co-defendant made incriminating statements in telephone conversations which were taped by government informer—Court held that Appellant had no standing to complain of violations of Fourth Amendment rights where he was not a party to the conversations and had no interest in the telephones or premises) ; Granza v. United States, 5 Cir., 1967, 377 F.2d 746 (Appellants were implicated in a narcotics smuggling conspiracy where the seizure of the incriminating evidence was facilitated by the illegal searches of a suitcase and a hotel room used by other members of the group—Court held appellants had no standing to complain where they had no interest in the items seized and premises searched).

6. See Jacobs v. Warden of the Maryland Penitentiary, 4 Cir., 1966, 367 F.2d 321. That case is factually somewhat similar to the instant case, and the Court's resolution of the problem squares with that which we hold today. The appellant there was an employee of a department store, who, after some period of filching clothing became bolder and masterminded an armed robbery of the store. One of the robbers, Kelly, was arrested and confessed, implicating Jacobs who was immediately arrested. Kelly's confession was later suppressed on the grounds that there was not an adequate showing of probable cause to arrest him and the statement was, therefore, the involuntary product of an illegal arrest. Rejecting Jacobs' claim that the invalid Kelly confession could not be the basis for probable cause for Jacobs' arrest, the Court had these comments:

Jacobs contends that, since Kelly's confession has been held involuntary as the technical product of his illegal arrest, it could not furnish probable cause for a belief that Jacobs was a participant in the crime which the officer knew had been committed. He concludes that his arrest must also have been unlawful and his confession the product of the unlawful arrest.

The contention draws the thread too fine. The connection between Kelly's illegal arrest and his confession is sufficiently close that the latter may be said *to be dependent upon the former.* The connection between Kelly's illegal arrest and Jacobs' confession is far more attenuated. The fruit-of-the-poisonous-tree doctrine need not be extended to its seedlings.

367 F.2d at 322–323 (footnote by the Court omitted).

[The exclusionary] rule, however, has been applied only to the protection of the victim of the search from its immediate, if collateral, consequences. Its purpose is to restore the victim to the position he would have been in had his right to be secure, from an unlawful search been observed. It has never been extended to cloak strangers to the unlawful search with absolute or conditional immunities.

The District Court, here, applied a similar rule to redress the wrong done Kelly when he was arrested without probable cause. Refusal to permit use of Kelly's confession against him, however, is an entirely sufficient recompense. The protection of Kelly's right does not require that others, who have suffered no deprivation of their rights, be made the beneficiaries of the exclusionary rule.

Again, Kelly's confession had all of the hallmarks of trustworthiness. If now it must be held *unusable against* Kelly because the police, who kept no records to prod their memories after the lapse of time, are now unable to

have been poisoned, but Smalley, unlike the scriptural Adam, was not the vicarious representative of all *man*, to bestow on them, here including Choice and Gissendanner, not his but the sins of the police*man*. They were not a party to it, were not in any way participants, so none of the rights of either was violated in its taking.

Affirmed.

### APPENDIX

The District Court's orders discussed each point as follows:

(i) illegal search of Smalley's car was conducted, the fruits of which incriminated all:

"The record shows that on January 13, 1966 at approximately 8:15 p. m. in North Miami Beach, Florida the prosecutrix was accosted on the street by three black youths who arrived on the scene in a 1956 Ford Victoria, blue and white. She was then driven to the home of the sister-in-law of the petitioner Gissendanner in Hollywood. Earlier that same day Gissendanner had helped his sister-in-law move from that house. Upon arrival at the house prosecutrix was raped by the three assailants who were positively identified by her at trial as the petitioners. After the rape the prosecutrix sought assistance at the house next door whereupon the police were summoned. That same evening the prosecutrix gave the police a description of the vehicle. The vehicle was detected later that evening in Hollywood and a license tag check revealed it was registered to petitioner Smalley. Upon receipt of this information the officers proceeded to Smalley's residence. Officer Madole testified that upon arrival at Smalley's residence he identified himself to Smalley's mother whereupon Smalley then came out of the house. Madole then testified that Smalley admitted that the car was his; that he later asked Smalley if he could have permis-sion to search the car and advised him that he had no obligation to do so; that he could contact an attorney and that if he found anything material in the car it could be used against him. Madole then testified Smalley gave his consent to search the car. As a result of this search a sandal was found in the car which was identified by the prosecutrix as being similar to one she wore on the night in question.

It is well accepted that consent may constitute a waiver of Fourth Amendment rights. Zap v. United States, 328 U.S. 624 [66 S.Ct. 1277, 90 L.Ed. 1477] (1946). However, the waiver must be an intentional relinquishment of a known right or privilege, Johnson v. Zerbst, 304 U.S. 458 [53 S.Ct. 1019, 82 L.Ed. 1461] (1938), and is not to be lightly inferred but rather must be shown by clear and convincing evidence. Phelper v. Decker, 401 F.2d 232 (5 Cir. 1968). Although the testimony at the trial was contradictory on the issue of consent, the question of the credibility of the witnesses was for the trier of the facts. The trial judge obviously gave credit to Officer Madole's testimony which was legally sufficient to constitute consent to the search of Smalley's car. In any event the petitioners Gissendanner and Choice would not have any standing to object to this search because they were neither present when it was conducted nor did they have any interest whatsoever in the car."

(ii) that Gissendanner's statement was involuntary and should have been suppressed;

(iii) that Choice and Smalley were unfairly incriminated by Gissendanner's statement:

"After the sandal was found in Smalley's car, he was arrested and gave a statement admitting his complicity in the crime and implicated petitioners Gissendanner and Choice. This statement was later suppressed and, therefore, not

identify their informants and justify Kelly's arrest, there was no unfairness of constitutional proportion in confront-ing Jacobs with the information Kelly had furnished the police.
Id. at 323.

introduced into evidence at the trial. As a result of the statement, however, arrest warrants issued for petitioners Gissendanner and Choice. Officer Robert Elliott then testified that at about 7:30 p. m. on January 19, 1966, he observed a vehicle in Dade County travelling at a high rate of speed. He stopped the car which contained some five or six passengers. In questioning some of the passengers he asked one to step to the rear of the car because two of the passengers had given him the same name. While he was talking to one of the passengers, petitioner Gissendanner stepped from the vehicle, walked to the back of the car and told him that his name was Robert Gissendanner, "and that he was wanted in Broward County for an alleged rape, that he was with the other fellows but that he didn't do anything." This statement of Gissendanner's was introduced into evidence at the trial. Petitioners presented evidence which sharply contradicted the testimony of Officer Elliott regarding the circumstances under which Gissendanner made this statement. Petitioners accused Officer Elliott and other officers who had arrived on the scene of threats and other coercive tactics in obtaining Gissendanner's identity and the statement. Here again the credibility issue was obviously decided against petitioners. Under the version of the facts as relayed by Officer Elliott the statement was clearly admissible. It is well settled that volunteered statements not the product of interrogation are admissible into evidence regardless of whether Miranda rights are afforded. United States v. Sanchez, etc., [449] F.2d [204] [5 Cir. #30754, 9/8/71] United States v. Powers, 444 F.2d 260 (5 Cir. 1971). The record provides a factual basis to support the admissibility of Gissendanner's statement.

Petitioners Smalley and Choice further contend that even if Gissendanner's statement was admissible against him, its admission was violative of their Sixth Amendment right to confrontation. They rely upon Bruton v. United States, 391 U.S. 123 [88 S.Ct. 1620, 20 L.Ed.2d 476] (1968). It is clear that the instant factual situation is significantly distinguishable from *Bruton*. The statement of Gissendanner did not in any way implicate Smalley and Choice. At most it acknowledged that there were "other fellows" involved in the commission of the crime. This came as no great revelation because the prosecutrix herself testified that she was raped by three assailants. Nothing in Gissendanner's statement could be interpreted as bearing directly or indirectly against Smalley and Choice. This being so, the reliance upon *Bruton* is misplaced."

(v) that the identification of all three defendants was insufficient;

(vii) that an air of racial prejudice existed:

"It is well settled that alleged errors regarding the sufficiency of evidence, jury instructions and alleged prejudicial comments will not provide a basis for Federal Habeas Corpus relief. Only when such matters reach a level of federal constitutional dimension will Federal Habeas Corpus relief be available. The alleged error must be one that rendered the trial so fundamentally unfair so as to amount to a denial of due process. Young v. State of Alabama, [443] F.2d [854] [5 Cir. #71–1355, 6/7/71]; Pleas v. Wainwright, 441 F.2d 56 (5 Cir. 1971); Scolf [Scalf] v. Bennett, 408 F. 2d 325 (8 Cir. 1969); Linebarger v. Oklahoma, 404 F.2d 1092 (10 Cir. 1968), cert. den. 394 U.S. 938 [89 S.Ct. 1218, 22 L.Ed.2d 470].

Petitioners' complaint concerning the sufficiency of the evidence regarding the identification of them by the prosecutrix stems from testimony of prior statements by her made shortly after the crime indicating her inability to make an identification. Here again a credibility question was involved. Despite these prior statements the record contains sufficient evidence upon which the jury could have reasonably believed

the prosecutrix's identification of petitioners.

The complained of jury instruction and the prosecutor's comments clearly do not present constitutional questions."