**J. Loyd PARKER, Jr., Petitioner-Appellant,**

**v.**

**W. J. ESTELLE, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 73–3630.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1974.

Rehearing and Rehearing En Banc Denied Oct. 24, 1974.

Arthur Mitchell, Stephen M. Orr, Austin, Tex., for petitioner-appellant.

Robert C. Flowers, Max P. Flusche, Jr., Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM and CLARK, Circuit Judges, and GROOMS, District Judge.

CLARK, Circuit Judge:

On May 3, 1963, the day after his father was found dead, petitioner J. Loyd Parker, Jr. confessed to the killing,[1] and on May 17, 1963 he was indicted for murder. The principal issues from the inception of the proceedings were Parker's sanity at the time of the act and his competency to stand trial. Pursuant to an agreement between counsel, a hearing was held at which Parker was found incompetent to be tried and was committed to Rusk State Hospital until he recovered his sanity. In February 1969, after spending six years in Rusk, he was released; and on May 19, 1969 a jury found that he was competent to be tried. In June 1969, represented by retained counsel, Parker was convicted by another jury of premeditated murder and sentenced to 10 years imprisonment. At the June trial the prosecution, somewhat surprisingly, put on a brief case of circumstantial evidence linking Parker to commission of the crime.[2] Although Parker's attorneys had been ready with witnesses, they elected not to present an insanity defense and thus avoid potentially damaging rebuttal evidence they knew to be in possession of the State. After an affirmance of his conviction by the Texas Court of Criminal Appeals, 457 S.W.2d 638 (1970), Parker filed his first federal habeas petition, which was dismissed for lack of exhaustion. He then filed a petition in the Texas court system, but relief was denied on the merits after a full evidentiary hearing by the state habeas judge; and his decision was affirmed by the Texas Court of Criminal Appeals, 485 S.W.2d 585 (1972). On the instant petition which followed, the district court found the facts fully developed in the State habeas hearing and denied relief on the merits of all of Parker's contentions. We affirm.

Parker urges thirteen contentions before us. Three of them revolve around his bare factual allegation that he did not receive credit on his 1969 sentence

---

1. Parker's confession was later suppressed by the trial judge.

2. The major part of this evidence was provided by the testimony of Julian Morales, long time Parker family gardener. He testified that he heard two shots, saw petitioner Parker exit the house and drive away in his Cadillac, and that he then observed Mr. Parker, Sr. lying prone on the kitchen floor. The other evidence tended to link Parker, Jr. with the purchase of a gun similar to the one that was used to kill his father. The murder weapon was never found.

for the six years spent at Rusk State Hospital after the 1963 jury found him incompetent to be tried. He alleges that this disallowance violated (1) his due process rights,[3] and (2) his right not to be twice punished for the same offense, *see* Wright v. Maryland Penitentiary, 429 F.2d 1101, 1103 (4th Cir. 1970); and denied him equal protection.[4]

■ Assuming arguendo, that detention and treatment at Rusk can be equated with punitive custody or punishment, this circuit distinguishes between credit for pre and post-sentence custody. Thus, in Robinson v. Beto, 426 F.2d 797 (5th Cir. 1970), and Hart v. Henderson, 449 F.2d 183 (5th Cir. 1971), we held that due process requires a state to give credit for time spent in custody after conviction since denied credit could operate to penalize the right of appeal, but in Gremillion v. Henderson, 425 F.2d 1293 (5th Cir. 1970), we held that "there is no federal constitutional right to credit for time spent prior to sentence." However, the plenary scope of *Gremillion* has been qualified by Hart v. Henderson, *supra,* and Hill v. Wainwright, 465 F.2d 414 (5th Cir. 1972), which hold that, although there is no absolute right to pre-sentence detention credit, a denial of such credit due to a defendant's poverty (*e. g.,* the financial inability to make bail) or to some other constitutionally impermissible basis will not be allowed to extend a state prisoner's sentence beyond the *maximum* prescribed for the crime. *See also,* Cobb v. Bailey, 469 F.2d 1068 (5th Cir. 1972) and Brown v. Beto, 359 F.Supp. 118 (S. D.Tex.1973). Although Parker alleges no such unconstitutional basis, we do not rest our decision on this lack.

■■ In federal cases in which the sentence imposed plus time spent in pre-sentence custody totals less than the maximum for the offense, there is a conclusive presumption that the sentencing judge gave credit for the pre-sentence custody. *See, e. g.,* Bryans v. Blackwell, 387 F.2d 764 (5th Cir.), cert. denied, 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1967). Rodriguez v. Blackwell, 433 F.2d 993 (5th Cir. 1970); Hyler v. Alexander, 423 F.2d 1215 (5th Cir. 1970), and Landman v. Mitchell, 445 F.2d 274 (5th Cir.), cert. denied, 404 U.S. 1022, 92 S.Ct. 695, 30 L.Ed.2d 671 (1971). Application of a concomitant presumption is required here. Parker elected to have the jury determine his punishment. Prospective jurors were informed on voir dire that he had spent six years at Rusk undergoing treatment while incompetent to be tried. At the punishment hearing defense counsel specifically urged the jury to consider these six years in determining punishment, and the jury returned a sentence of only ten years for premeditated murder, an offense which carries a permissible punishment of imprisonment for any number of years or life. Moreover, the state habeas judge, who also conducted the trial and the punishment hearing, found "the jury was permitted to take into consideration the six years spent in Rusk by petitioner and the jury did take this into consideration and that was the reason for such minimum punishment of ten years in this case." In these circumstances, we reject Parker's bald assertion that he was denied credit for the time spent at Rusk and with it fall his related constitutional arguments.

■ Another set of arguments concerns the fact that no jury has ever re-

---

3. He grounds this argument on the rationale of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and argues that failure to credit the time he spent at Rusk penalized the assertion of his "defense" of incompetency to stand trial just as a denial of credit for time served pending appeal was held in *Pearce* to violate due process by penalizing assertion of the right to appeal.

4. The equal protection argument is that it is arbitrary and unreasonable for Texas to require credit for post-conviction time spent in a mental institution, Vernon's Ann.Tex.Code Crim.Pro. 46.01 § 8, but deny credit for pre-conviction time spent in such an institution, Tex.Code Crim.Pro. 46.02 § 10.

solved the question of Parker's sanity at the time of the offense. Relying on the testimony of the 1963 district attorney that he believed Parker insane at the time of offense and the fact that several psychiatrists were willing to testify to this, Parker asserts numerous constitutional errors. He alleges that his retained counsel's failure to submit this issue either to the competency hearing jury[5] or to the convicting jury, coupled with the fact that the prosecutors and the trial judge knew "of the defense and yet did nothing to see that it was submitted to either jury," deprived him of his Sixth Amendment right to effective assistance of counsel both in 1963 and 1969. Additionally, he argues that the fact that the sanity issue was not submitted at the 1963 competency hearing of itself was a denial of due process.[6] and that it denied him due process for the state to allow a conviction "knowing" of his insanity. As to the ineffective assistance claims,[7] the state habeas judge's findings that the decisions not to submit the sanity issue to either jury were legitimate tactical ones made by competent attorneys are fully supported by the record, see 28 U.S.C. § 2254(d), and are in full compliance with our "reasonably likely to render and rendering reasonably effective assistance" standards.[8] See Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974); citing MacKenna v. Ellis, 280 F.2d 592 (5th Cir.), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1960). Nor was Parker deprived of due process because the sanity question was not submitted to the jury in 1963. Parker argues that Article 932b of the Texas Code of Criminal Procedure in force in 1963, required that both issues be submitted to the jury at the competency hearing, and since he had been determined to be incompetent at the time of the hearing, he was of necessity incompetent to waive this statutory right. Even assuming we could find the state had an affirmative duty under its statute to submit the issue, the right remains purely one created by state statute and not a matter of constitutional mandate. Hence, this claim is not cognizable on federal habeas corpus. As for the argument that the state should not have tried to convict Parker, the fatal flaw is the assertion that the prosecutors "knew" Parker was insane. While the testimony at the state habeas hearing indicates that the district attorney at the time and some psychiatrists believed Parker insane, it also shows that the assistant district attorney who was primarily responsible for the case thought otherwise. Since the issue was doubtful and since it is a defendant's burden to present a *prima facie* case to overcome the presumption of sanity, Parker can only succeed by establishing that his attorneys represented him ineffectively by not presenting such a claim. We have previously rejected this very contention.

 Parker further asserts that the trial judge's denial of bail coupled

---

5. His attorneys had first indicated by written notice an intention to present both the sanity at the time of the crime and competency to be tried issues, but later decided only to present the competency to stand trial issue.

6. He also argues that failure to present the issue of his sanity at the time of offense at the 1963 hearing denied him any chance of acquittal at that hearing and resulted in the 1969 trial violating his rights against double jeopardy. We reject this argument. It involves a fundamental misconception of the meaning of a competency determination and the function of a competency hearing. Since there is no possibility of conviction for the substantive offense, jeopardy does not attach at such a hearing.

7. We reject Parker's contention that he was denied counsel of his choice at the 1969 trial because the state habeas judge's finding that his request for different counsel was made purely to obtain a continuance is fully supported by the record, see 28 U.S.C. § 2254(d); United States v. Carter, 453 F.2d 402 (6th Cir. 1971); Bowman v. United States, 409 F.2d 225 (5th Cir. 1969), and United States v. Cozzi, 354 F.2d 637 (7th Cir.), cert. denied, 383 U.S. 911, 86 S.Ct. 896, 15 L.Ed.2d 666 (1965).

8. We avoid any determination of whether the prosecutor's and trial judge's knowledge of the possibility of an insanity defense was sufficient state action to bind the State of Texas to the actions of retained counsel.

with the prosecutor's pretrial assertion that the state would seek the death penalty if Parker challenged this denial by way of habeas corpus, operated to deprive him of his Eighth Amendment right to be free from excessive bail, and to deny him due process. The prosecutor's conduct, which gave the judge's ruling a macabre finality, might raise constitutional questions if presented to us in the proper context. However in the absence of any allegation of prejudice[9] other than increased pretrial custody, we hold that both issues are now moot.[10] Parker is now confined by virtue of a conviction in no way tainted by these alleged illegalities. *See, e. g.*, Smith v. Warden, 280 F.Supp. 827 (D. Md.1968), and Sheldon v. Nebraska, 401 F.2d 342 (8th Cir. 1968).

Parker next argues that the state obtained a crucial correction in the statement of Julian Morales by use of Parker's admittedly invalid confession, and consequently truthful testimony from Morales was proscribed by the so-called "fruit of the poisoned tree" principle of Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L. Ed. 319 (1919).[11] The record indicates that Morales, who was the gardener on the elder Parker's estate, initially told investigating officers that he had neither heard nor seen anything suspicious at the time of the father's slaying. However, sometime after Parker gave his confession in which he stated that Morales had been present at his father's house when the crime occurred, Morales changed his statement to what he eventually testified at trial, *i. e.*, that he

heard two shots and saw Parker fleeing the scene of the crime.

There can be no doubt that the *Silverthorne* principle, announced in a search and seizure context, is applicable to a suppressed confession case, Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1969); or that its exclusionary effect applies not only to tangible evidence but also to the testimony of witnesses. *See, e. g.*, United States v. Marder, 474 F.2d 1192 (5th Cir. 1972), and Williams v. United States, 382 F.2d 48 (5th Cir. 1967); *see generally,* Ruffin, Out on a Limb of the Poisonous Tree: The Tainted Witness, 15 UCLA L.Rev. 32 (1967). However, the relevant issue in each case is broader than a sterile "but for" inquiry; rather "[t]he more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). This language incorporates two previously recognized exceptions to *Silverthorne*. First, evidence acquired through a source independent of the unlawful conduct is admissible notwithstanding its connection with such conduct. *See Silverthorne, supra.* Second, if the nexus between the unlawful conduct and the discovery of the evidence has "become so attenuated as to dissipate the taint" the evidence is admissible. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).[12] The facts

---

9. Parker's attorneys at his 1969 trial testified at the habeas hearing that they were in no way handicapped because Parker was not released on bail.

10. For the same reason, we reject Parker's argument that the trial judge denied him due process by incorrectly stating that he would lose credit for the time spent at Rusk if he secured bail.

11. In *Silverthorne, supra,* the court stated the policy behind the rule as follows:

The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all.
251 U.S. at 392, 40 S.Ct. at 183, 64 L.Ed. at 321.

12. The specific reasons for the trial judge's denial of Parker's motion to suppress Morales' testimony are unclear in the record of the proceedings in the trial court. They are

of the instant case warrant application of the second exception. It is initially clear that this case does not involve police discovery of the name of a witness, as in Williams v. United States, *supra,* and United States v. Marder, *supra,* but rather a corrected statement by a witness previously interviewed by the police. The exact reason why Morales decided to tell the truth cannot be discerned from the record before us. It is clear that he came to the decision to change his story after being made aware of the contents of Parker's confession.

■ It is also clear that he decided to purge himself after he had consulted a lawyer for advice, the lawyer had told him to tell the truth, and had brought Morales to the courthouse for that purpose. Morales' reaction to the initial police inquiry may have been that he should avoid all involvement with his employer's death, even at the cost of perjury. Obviously, he had second thoughts. Can we say that the pressure of the confession must have dominated Morales' conscience to cause him to change his story? In this outer reach of the exclusionary rule, we decline Parker's invitation to speculate on the imponderables of human will and motivation, *see* Smith and Bowden v. United States, 117 U.S.App.D.C. 1, 324 F.2d 879 (1963). Since the facts will not permit us to tie the acquisition of the evidence clearly and directly to the confession as the court was able to do in Harrison v. United States, *supra,* we hold that what-

ever connection there may be between Parker's confession and Morales' testimony is "so attenuated as to dissipate the taint." Additionally we do not think it would serve the deterrent purpose of the exclusionary rule to deny to Parker's trial not merely the unlawful confession but also, truthful testimony from Morales. The purpose of the police practices which have been found to be illegal, was to extract a confession from Parker. If the police so believed Morales' first statement that they intended to accept it without further question, as Parker's exclusionary argument presupposes, then it would have been beyond the scope of their unlawful purpose in obtaining the confession to secure information about Morales, and they would have come by this information quite unexpectedly. Thus, any deterrent to future illegal police practices from the exclusion of Morales' testimony would be slight. The exclusion of the confession, which was the intended objective of the illegal police practices, is an ample deterrent. *See* Harrison v. United States, *supra* (White, J., dissenting) and Note, 115 Pa.L.Rev. 1136 (1967).

Finally, Parker contends that "the unlawful confession irreversibly tainted the entire trial." Since we have rejected his argument that the illegality of the confession requires the suppression of Morales' testimony, and since the confession was never introduced into evidence, we reject this argument also.

Affirmed.

---

not clarified in the opinion of the state habeas hearing judge. However, the Texas Court of Criminal Appeals apparently adopted what has become known as the "inevitable discovery rule" in its opinion. *See* Annotation, 43 A.L.R.3d 385, 404 (1972). The Supreme Court has never approved this rule and application of the rule in this circuit

was rejected in United States v. Castellana, 488 F.2d 65, 68 (5th Cir. 1974); but *cf.* Gissendanner v. Wainwright, 482 F.2d 1293, 1297 (5th Cir. 1973). This rule might minimize the number of times a guilty defendant could avoid conviction but is hard to square with the deterrent purposes of the various exclusionary rules.