**Roland Colquett GAMBLE,
Petitioner-Appellee,**

v.

**STATE OF ALABAMA,
Respondent-Appellant.**

No. 74–2290.

United States Court of Appeals,
Fifth Circuit.

March 5, 1975.

Rehearing and Rehearing En Banc
Denied April 29, 1975.

William J. Baxley, Atty. Gen., Joseph
G. L. Marston, III, Asst. Atty. Gen.,
Montgomery, Ala., for respondent-appellant.

John W. Davis, III, Montgomery, Ala.
(Court-appointed), for petitioner-appellee.

Before GODBOLD and MORGAN, Circuit Judges, and BOOTLE, District
Judge.

GODBOLD, Circuit Judge:

This case presents the following question: By statute a state prisoner sentenced to the penitentiary is given the option of spending his time pending appeal in the local jail or in the state penitentiary to which he has been sentenced. If he chooses the option of jail, must he be credited with his jail time in the computation of time served under his sentence. We find that controlling precedent precludes credit for the jail time so served, and we reverse the District Court on that point.

On July 1, 1971, the appellee was convicted of second degree murder in an Alabama state court. He was sentenced to 30 years' imprisonment in a state penitentiary. Evidently he failed to take an appeal immediately after his conviction and waited until October 12, 1971, before filing a pro se appeal in state court. The appeal resulted in affirmance of conviction on August 15, 1972. Rehearing was denied September 12, 1972.

From the time of his arrest, and through January 31, 1973, when he was transferred to a state penitentiary, appellee was confined at the Etowah County Jail. The state has refused to credit this 16-month period of jailhouse detention in its computation of appellee's time served under his 30-year sentence. The state contends that its denial of credit is mandated by a constitutionally valid state statute which permits a convicted felon taking an appeal to choose between jail and prison as his place of incarceration during the pendency of the appeal. Under this scheme, the appellant can elect a "direct" or a "working" appeal. A "direct" appeal is authorized by Tit. 15 § 372, Code of Alabama, 1940, which provides for release on bail of certain felons but contains no provision for release of those whose sentence exceeds 20 years' confinement. Persons who cannot gain release during appeal are held in county jails. Execution of sentence is suspended while the inmate is housed in jail. However, Tit. 15 § 373, Code of Alabama, 1940, permits the appellant prisoner to waive suspension of sentence execution. Upon waiver, the inmate is transferred from jail to penitentiary, and the sentence begins to run. The taking of a working appeal does not affect the appellate process. The only difference between a working and a direct appeal involves suspension of sentence execution and locus of detention. A direct appeal may be converted to a working appeal "at any time before the transcript has been forwarded to the clerk of the appellate court". Evidently the appellee had been advised of his right to waive direct appeal and knowingly elected to remain in jail under § 372.

In a pro se petition for habeas corpus filed February 1, 1974 in federal district court, appellee contended that the state's denial of credit violated various of his federal constitutional rights. The District Court upheld this claim, relying on Robinson v. Beto, 426 F.2d 797 (CA5, 1970); and Hart v. Henderson, 449 F.2d 183 (CA5, 1971). In those cases this court found Texas and Louisiana mandatory suspension of execution statutes unconstitutional under North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). The District Court also relied on Hood v. Alabama, No. 73–265–W (N.D.Ala. June 11, 1973), in which the Alabama optional suspension of execution was found invalid under *Robinson* and *Hart.* In *Hood*, the state was ordered to credit jail time served during a direct appeal in the computation of total time served under sentence.

*Hart* and *Robinson* do not control the validity of the Alabama scheme. In those cases this court looked to the requirement enunciated in North Carolina v. Pearce, 395 U.S. at 723–726, 89 S.Ct. at 2079–2081, 23 L.Ed.2d at 668–670, that the state's appellate procedure cannot, consistent with due process, inhibit the exercise of the right of appeal. The statutes scrutinized and ultimately held invalid in *Hart* and *Robinson* automatically stayed execution of sentence during pendency of appeal. An automatic stay would necessarily require a prisoner considering an appeal to weigh the doubt of success against the certainty of extended incarceration upon denial of appeal. The natural effect of these automatic stay statutes would be to inhibit the taking of appeals.

■ The Alabama scheme is, on its face, dissimilar from the Louisiana and Texas automatic suspension statutes. In Alabama stay of sentence execution is avoidable, and avoidance results in no adverse effect to the prisoner taking appeal. Appellee has not contended that despite facial fairness the Alabama statutes in fact operate to curb the taking of appeals. In the absence of such a contention and supportive evidence of a "chilling" effect, we find the Alabama optional stay of sentence scheme fulfills the due process requirements of *Pearce.*

■ Appellee also argues that *Pearce's* finding that the double jeopardy clause precludes multiple punishments for a single offense compels us to order credit for the jail time served. This contention is foreclosed by Dimmick v. Tompkins, 194 U.S. 540, 24 S.Ct. 780, 48 L.Ed. 1110 (1904), a case in which the Court denied credit under circumstances similar to those in the instant case. *Dimmick* has not been limited by *Pearce* or by any other subsequent Supreme Court decision. Its vitality was recently recognized by this court in Allen v. Henderson, 434 F.2d 26, 29 (CA5, 1970).

In *Dimmick*, the petitioner had been sentenced to two years' imprisonment at hard labor for a federal offense. He took an appeal and arranged to be housed during the 18-month period of appeal in a county jail rather than the penitentiary to which he had been sentenced. When the appeal was decided against him, he was transferred to the penitentiary. Credit for the 18-month period was denied him, and he sought judicial review. Ultimately the Supreme Court held that he was not entitled to credit. The Court noted that Dimmick's sentence specified "imprisonment in . . . prison" and that he had arranged for detention in jail during the pendency of the appeal. Under these circumstances jail time was not time served "under the judgment" but rather was "owing to [Dimmick's] efforts to obtain a review and reversal of the judgment". 194 U.S. at 547, 24 S.Ct. at 781, 48 L.Ed. at 1113. The inmate had himself obtained the stay of sentence execution. The Court would not allow him to "take advantage of his own action . . . [and] thereby shorten the term of imprisonment in the state prison . . . To hold otherwise would be inconsistent with the general principle that a person shall not be permitted to take advantage of any act of another which was committed upon his own request, or was caused

by his own conduct." 194 U.S. at 549, 24 S.Ct. at 782, 48 L.Ed. at 1114.

On the facts *Dimmick* controls, for in the instant case appellee's own actions resulted in his incarceration in the county jail and the resultant suspension of sentence execution. Like the petitioner in *Dimmick*, appellee alone determined the locus of his detention and had the power to compel his own transfer to prison. He failed to exercise that power and cannot now complain of the result.

 *Dimmick* controls, however, only so far as appellee was responsible for his detention in jail rather than prison. Credit is disallowed only for that portion of the time spent in Etowah County Jail during appellee's appeal. *Dimmick* does not bar credit for the time appellee spent in jail after conviction and before the appeal was filed, nor for the time served in jail after the conviction was affirmed on appeal and through the time of transfer to prison. These periods of jailhouse detention were the result not of appellee's action but of the state's failure to transfer him to the place of sentence, and the state cannot deny credit where its failure to transfer a prisoner to an appropriate place of incarceration after sentence results in jailhouse rather than prison incarceration.

Reversed and remanded.

LEWIS R. MORGAN, Circuit Judge (dissenting):

The majority today takes its cue from Richard Lovelace, author of the oft-quoted lines, "Stone walls do not a prison make/Nor iron bars a cage."[1] Neither, the majority implicitly holds, does imprisonment equal punishment if the prisoner has chosen to await the outcome of his appeal in jail rather than prison. Since I believe a prisoner is constitutionally entitled to credit for time spent in state-imposed imprisonment, I respectfully dissent.

The majority rests its opinion on two rather questionable assumptions. The first is that all prisoners are well informed of their choice under the Alabama statutory scheme. In an ideal world, such might be the case; in our imperfect world, I believe such an assumption is mere wishful thinking. The truth is that Alabama prisoners are presumed to want their sentences suspended. No state official is required to inform them of their right to "waive benefit of suspended sentence." There is no question in my mind that many prisoners never obtain this information from any source, and that the "choice" which the majority finds so important is therefore non-existent in many cases. The crucial distinction between this case and Robinson v. Beto, 426 F.2d 797 (5th Cir. 1970), and Hart v. Henderson, 449 F.2d 183 (5th Cir. 1971) thus fades neatly away.

I therefore view the Alabama statute as one which automatically denies a prisoner credit for time spent in jail pending appeal, unless he somehow discovers that he has a right to waive benefit of suspended sentence. The question is thus, it seems to me, whether a state may enact such a scheme consistently with the Fifth Amendment's guarantee against double jeopardy.

This raises the majority's second questionable assumption: that Dimmick v. Tompkins, 194 U.S. 540, 24 S.Ct. 780, 48 L.Ed. 1110 (1904) is still the law. In light of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) I simply cannot agree that it is. I believe that the Court in *Pearce* clearly indicated that our Constitution is concerned with protecting citizens from excessive punishment, without regard to where or when the punishment occurs. *Pearce* is not controlling, of course, since it deals with resentencing after a second trial, but the central idea is directly on point: ". . . this basic constitutional guarantee [protection against double jeopardy] is violated when punishment already exacted for an offense is not fully 'credited' . . .." 395 U.S. at 718, 89 S.Ct. at 2077.

No amount of legal legerdemain can hide the fact that Gamble was not given credit for punishment already exacted in the county jail when he was transferred

1. "To Althea: From Prison"

99

to the state prison. We offer him but cold comfort in holding that he was not being "punished" while in the county jail because he had chosen to remain there. I believe the Constitution demands that he be given credit for that time, and I would therefore affirm the district court.