Arthur JACKSON, Jr.,
Petitioner-Appellant,

v.

STATE OF ALABAMA,
Respondent-Appellee.

Jasper Lee COOKS,
Petitioner-Appellant,

v.

CIRCUIT COURT OF MOBILE
COUNTY, Respondent-Appellee.

Nos. 75–1186, 75–1879.

United States Court of Appeals,
Fifth Circuit.

April 30, 1976.

Rehearing and Rehearing En Banc
Denied Aug. 16, 1976.
See 536 F.2d 1113.

Godbold, Circuit Judge, filed dissenting opinion.

Robert R. Bryan, Birmingham, Ala., Larry W. Yackle, University, Ala., for petitioners-appellants.

William J. Baxley, Atty. Gen., Montgomery, Ala., David L. Weathers, Asst. Atty. Gen., Birmingham, Ala., G. Daniel Evans, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee in No. 75–1186.

William A. Golinsky, Asst. Atty. Gen., William J. Baxley, Atty. Gen., Gary R. Maxwell, G. Daniel Evans, Asst. Attys. Gen., Montgomery, Ala., for respondent-appellee in No. 75–1879.

Before GODBOLD, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Appellants, Arthur Jackson, Jr. and Jasper Lee ("Tiny") Cooks, appeal from the denial by two separate Alabama federal district courts of their respective petitions for writs of habeas corpus. The only issue presented by Jackson and one of two issues presented by Cooks is whether an indigent Alabama state prisoner unable to make bond due to indigency and who is sentenced to less than the statutory maximum sentence for his offense is entitled to credit on his sentence for the period of pre-trial or presentence detention. Cooks makes an additional contention: that he is entitled to credit against his sentence for the time he spent in custody pending direct appeal of his conviction, because of asserted unconstitutionality of the Alabama statutory scheme,[1] which automatically suspends the execution of sentence pending appeal unless the appellant elects otherwise. We affirm the denials of both petitions for habeas corpus on the authority of binding prior decisions of this court. See *United States v. Automobile Club Ins. Co.,* 5 Cir. 1975, 522 F.2d 1; *Linebery v. United States,* 5 Cir. 1975, 512 F.2d 510.

The underlying facts as to the appellants' claims are briefly as follows: On September, 1970, Jackson was arrested and charged with first degree murder, Title 14, Section 314, Code of Alabama. Bail was fixed at $5,000, which Jackson contends he was unable to meet due to indigency. On August 19, 1972, however, after having spend approximately 23 months in custody awaiting trial Jackson made bond and was released. In a jury trial on April 20, 1973, Jackson was convicted of murder in the second degree, an included offense under the Alabama Statute, and was sentenced by the jury to 18 years imprisonment in the state penitentiary. Title 14, Section 318, Code of Alabama, provides that the sentence for second degree murder is within the discretion of the jury, provided that the term of imprisonment shall not be for less than 10 years in the state

---

1. See note 12 infra and accompanying text.

penitentiary. Jackson did not appeal directly from his conviction, and did not seek state post-conviction relief by habeas corpus, error *coram nobis* or otherwise. Instead on September 11, 1974, he petitioned the court below for habeas corpus relief.[2] His petition asserted that Jackson was entitled to credit toward the service of his 18 year sentence for the 23 months he was held in pre-trial custody, averring that the denial of such credit by the State contravened: (i) the double jeopardy clause of the Fifth Amendment, applicable to the states under the Fourteenth Amendment; (ii) the Eighth Amendment, cruel and unusual punishment, applicable to the states under the Fourteenth Amendment; (iii) the due process and equal protection clauses of the Fourteenth Amendment. The district judge denied the petition holding that under the decisions of this court in *Cobb v. Bailey,* 5 Cir. 1972, 469 F.2d 1068, and *Gremillion v. Henderson,* 5 Cir. 1970, 425 F.2d 1293, Jackson was not entitled to credit for pre-sentence jail time.

Appellant Cooks was arrested on June 28, 1971, for burglary in the first degree, Title 14, Section 85, Code of Alabama. Bail was set at $15,000 on February 14, 1972. Cooks alleges he was unable to post bail due to his indigency. He was held in pre-trial detention for 283 days at the Mobile City and County Jails. Cooks was convicted at a jury trial on April 6, 1972 and sentenced to serve the statutory minimum sentence for first degree burglary of ten years in the state penitentiary,[3] Title 14, Section 85, Code of Alabama. After the entry of judgment and sentence, Cooks filed a notice of appeal which under Alabama law automatically suspends execution of the sentence. Bail pending appeal was set at $10,000, which Cooks alleges he was unable to meet due to indigency. On April 26, 1972, he was transferred from the Mobile County Jail pursuant to court order to the State's Medical and Diagnostic Center at Mt. Meigs, Alabama. He remained at Mt. Meigs until June 28, 1973, when he was transferred to the Alabama State Penitentiary at Holman, Alabama.

Cooks' conviction was affirmed by the Alabama Court of Criminal Appeals on February 13, 1973, and certiorari review was denied by the Alabama Supreme Court on April 19, 1973. *Cooks v. State,* 1973, 50 Ala.App. 49, 276 So.2d 634, cert. denied 1973, 290 Ala. 363, 276 So.2d 640. Since Cooks did not elect to take a "working" appeal under Alabama law his ten year sentence did not begin to run until April 19, 1973, the date on which the Alabama Supreme Court denied certiorari review of his conviction. Therefore, Cooks received no credit for the 387 days which he spent in post-trial custody pending appeal. His right to credit against his ten year sentence for these 387 days is the second issue raised by Cooks' appeal.

2. Although Jackson did not present his claim for pre-trial credit to the courts of Alabama, we note that the appellate courts of that state have consistently denied pre-trial detention credit. See *Ryan v. State,* Ala.1894, 100 Ala. 105, 14 So. 766; *Bailey v. State,* Ala.App.1975, 315 So.2d 136, 137; *Robinson v. State,* 1971, 47 Ala.App. 51, 249 So.2d 872. Further, the Alabama Court of Criminal Appeals has held that habeas corpus is available in Alabama only when the petitioner is entitled to immediate release, and also that a request for pre-sentence credit is not a proper subject of collateral attack by a writ of error *coram nobis.* *Ex Parte Miller,* 1972, 54 Ala.App. 590, 310 So.2d 890; *Bailey v. State,* supra. Under these circumstances the exhaustion requirements of Title 28, U.S.C. Section 2254(b) need not be further pursued, there existing "an absence of available State corrective process." *Ibid.*

3. The maximum penalty for first degree burglary in Alabama is death, Title 14, Section 85, Code of Alabama. The holding of *Furman v. Georgia,* 1972, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, apparently limits the maximum to life imprisonment. But see *Fowler v. North Carolina,* N.C.1974, 285 N.C. 90, 203 S.E.2d 803, cert. granted 1974, 419 U.S. 963, 95 S.Ct. 223, 42 L.Ed.2d 177, restored to the calendar for reargument 1975, 422 U.S. 1039, 95 S.Ct. 2652, 45 L.Ed.2d 691, order setting case for reargument revoked, 1976, *Fowler v. North Carolina,* —— U.S. ——, 96 S.Ct. 1094, 47 L.Ed.2d 307, 44 U.S.L.W. 3470. The latter action was occasioned by the grant of certiorari, 423 U.S. 1082, 96 S.Ct. 1090, 1091, 47 L.Ed.2d 93, 94, 44 U.S.L.W. 3439, in the six death penalty cases argued before the Supreme Court the week of March 29, 1976.

In June 1973, Cooks filed two *pro se* petitions for the writ of error *coram nobis* in the Mobile County Circuit Court collaterally attacking his conviction and seeking credit on the service of his sentence for the time he spent in post and pre-trial confinement. These petitions were denied by the trial judge.[4]

On April 2, 1974, Cooks filed his habeas petition in the court below urging four separate grounds for relief. One of the grounds[5] urged by Cooks in support of his habeas petition was that he had been unlawfully denied credit toward service of his ten year sentence for the periods he was held in Mobile City and County Jails prior to trial and at the county jail and the facility at Mt. Meigs during the pendency of his appeal. The district court denied relief holding (1) that since Cooks had received a minimum sentence of ten years under the statute credit for pre-trial detention was not required, citing *Cobb v. Bailey,* supra; *Hill v. Wainwright,* 5 Cir. 1972, 465 F.2d 414; *Hart v. Henderson,* 5 Cir. 1971, 449 F.2d 183; and (a) that since he had not opted for a "working" appeal he was not entitled to credit for post-trial incarceration, citing *Duke v. Blackwell,* 5 Cir. 1970, 429 F.2d 531; *Tandler v. Blackwell,* 5 Cir. 1969, 412 F.2d 780.

## PRE–SENTENCE JAIL TIME

The issue common to both appeals then is whether an indigent criminal defendant held in custody in a local jail prior to trial and sentencing due to his inability to post bail is entitled to credit for pre-sentence detention time upon the sentence ultimately imposed after conviction. The appellants' position is that the equal protection clause and the due process clause of the Fourteenth Amendment require that the State grant such credit, that denial thereof constitutes an unconstitutional restriction upon a criminal defendant's exercise of the right to a jury trial under the Sixth and Fourteenth Amendments, and further constitutes cruel and unusual punishment prohibited by the Eighth Amendment. In support of these contentions the appellants rely on decisions of other circuits which hold that a State must grant credit to an indigent criminal defendant for all pre-sentence custody time even when the combined period of confinement (actual sentence plus time spent in pre-sentence custody) does not exceed the statutory maximum sentence proscribed for an offense. See *King v. Wyrick,* 8 Cir. 1975, 516 F.2d 321; *Ham v. North Carolina,* 4 Cir. 1971, 471 F.2d 406; *Monsour v. Gray,* E.D.Wis.1973, 375 F.Supp. 786; *White v. Gilligan,* S.D.Ohio 1972, 351 F.Supp. 1012. We are bound by prior decisions in this circuit on this issue and hence decline to follow the rationale of the cited cases.

*Gremillion v. Henderson,* supra, was the first case in which we considered

---

4. The district court found that Cooks had met his obligation of exhaustion under Title 28, U.S.C., Section 2254, since although he did not appeal the decisions in either of the coram nobis petitions his right of appeal expired six months after the entry of judgment. See *Harris v. Alabama,* 5 Cir. 1970, 429 F.2d 1236. No consideration was apparently given to the cases we cite in Note 2, supra, as meeting the requirements of Title 28 U.S.C., § 2254(b). Under this approach, and perhaps under that taken by the district court as well, no available state corrective process existed when Cook filed his federal habeas petition.

5. The other grounds for relief assigned by Cooks in the district court were: (i) that he was not advised at the time of his arrest of his rights under the decision in *Miranda v. Arizona,* 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; (ii) that he was arrested without a warrant; and (iii) that he was subjected to

an illegal warrantless search and seizure. The district court concluded with respect to these three grounds: (i) that no statements made by Cooks at anytime were introduced in evidence at his trial, and therefore Miranda was inapplicable; (ii) the warrantless arrest was not grounds for federal habeas corpus relief, unless the arrest deprived Cooks of a fair trial and he had not alleged any prejudice flowing from the arrest without a warrant, citing *Perry v. Texas,* 5 Cir. 1972, 456 F.2d 879, and *Brooks v. Smith,* 5 Cir. 1970, 429 F.2d 1281; (iii) because no evidentiary exhibits of a physical nature were offered by the State at Cooks' trial, and because the record did not show whether a search had actually taken place, the challenge to an illegal search and seizure need not be considered.

The district court's disposition of these issues is not challenged by Cooks on this appeal.

whether a state prisoner may be granted federal habeas corpus relief allowing credit on his sentence for time spent in custody prior to sentencing. We held that the State prisoner's claim was not cognizable under federal habeas corpus because "there is no federal constitutional right to credit for time served prior to sentence", and in the absence of a state statute the granting of such credit is within the discretion of the sentencing judge. *Gremillion,* supra, at 1294. See also *Culotta v. Pickett,* 7 Cir. 1974, 506 F.2d 1061, 1063, cert. denied 1975, 421 U.S. 968, 95 S.Ct. 1961, 44 L.Ed.2d 458. Subsequent decisions of this court while adhering to the basic rule of *Gremillion v. Henderson,* supra, have narrowed the scope of that rule as a result of *Williams v. Illinois,* 1970, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586, and *Tate v. Short,* 1971, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130.

The Supreme Court held in *Williams v. Illinois* that an indigent criminal defendant may not be confined beyond the statutory maximum term of imprisonment provided for a given offense because of his inability to pay a fine and court costs. Noting that although a state has wide latitude in fixing the punishment for state crimes, the Court stated: "once the State has defined the outer limits of incarceration necessary to satisfy its penological interests and policies, it may not then subject a certain class of convicted defendants to a period of imprisonment *beyond the statutory maximum* solely by reason of their indigency". *Ibid* at 241–42, 90 S.Ct. at 2022, 26 L.Ed.2d at 593 (emphasis supplied). Following *Williams v. Illinois,* the Court in *Tate v. Short,* supra, held that since the State of Texas had "legislated a 'fines only' policy for traffic offenses, that *statutory ceiling* cannot, consistently with the Equal Protection Clause, limit the punishment to payment of the fine if one is able to pay it, yet convert the fine into a prison term for an indigent defendant without the means to pay his fine." *Tate v. Short,* supra at 399, 91 S.Ct. at 671, 28 L.Ed.2d at 133–34 (emphasis added).

This court in *Hart v. Henderson,* supra, after the decisions in *Williams v. Illinois* and *Tate v. Short* came down, was confronted with the factual situation where a prisoner had been sentenced to the *statutory maximum* term provided for an offense and given no credit on the service of that sentence for the time he was held in jail pending trial. We held in *Hart v. Henderson* "that the inability of an indigent criminal defendant to make bond should not result in extending the duration of his imprisonment beyond the *statutory maximum*". *Hart v. Henderson,* supra at 185 (emphasis added). Under the teachings of *Williams v. Illinois,* supra, and *Tate v. Short,* supra, we vacated the judgment of the district court denying Hart habeas corpus relief, and remanded for a determination of whether the appellant had been unable to post bail due to indigency. Again, in *Hill v. Wainwright,* 5 Cir. 1972, 465 F.2d 414, a case factually on all fours with *Hart v. Henderson,* supra, we followed the *Hart* exception to the basic rule of *Gremillion,* supra, and held that "a state prisoner who has received the *maximum imposable prison sentence* for an offense must be given credit for all presentence jail time if he was unable to make bail due to his indigence". *Id.* at 415 (emphasis added). *Hill v. Wainwright,* supra, distinguished *Gremillion v. Henderson* on the ground that the appellant in that case had not received the maximum imposable prison sentence. *Ibid.* at 415, n. 3. Hence, although the decisions in *Hart v. Henderson,* supra, and *Hill v. Wainwright,* supra, narrowed the applicable scope of the rule enunciated in *Gremillion v. Henderson,* supra, in neither case did we hold contrary to *Gremillion* that all indigent state prisoners have an absolute constitutional right to credit for time spent in pre-sentence custody. *Cobb v. Bailey,* 469 F.2d at 1070; *Parker v. Estelle,* 5 Cir. 1974, 498 F.2d 625, 627, cert. denied 1975, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450.

The adherence of this circuit to the *Gremillion* rule as qualified by the decisions in *Hart* and *Hill* is illustrated by

*Cobb v. Bailey,* wherein an Alabama state prisoner contended that because she had received the maximum imposable sentence for the crime for which she was convicted she was entitled under *Hart v. Henderson,* supra, to credit on her sentence for pre-conviction jail time. We rejected the contention that the decision in *Gremillion* was eroded by our decision in *Hart v. Henderson,* noting that it was evident that there is no constitutional right to credit for time served prior to sentencing since it was necessary for Congress in 1966 to pass legislation, Title 18, U.S.C., Section 3568, requiring that in the future federal prisoners be given such credit. Following the decision in *Gremillion* this court denied relief to the appellant in *Cobb* since she had been held originally for a nonbailable offense and had not alleged that after bail was allowed she was discriminatorily denied the opportunity to make it.

Most recently, in *Parker v. Estelle,* supra, Judge Clark speaking for this court, clarified the rule in this circuit for crediting the sentences of state prisoners with pre-sentence jail time.

"[T]he plenary scope of *Gremillion* has been qualified by *Hart v. Henderson, supra,* and *Hill v. Wainwright* [supra], which hold that, although there is no absolute right to pre-sentence detention credit, a denial of such credit due to a defendant's poverty (e. g., the financial inability to make bail) or to some other constitutionally impermissible basis will not be allowed to extend a state prisoner's sentence beyond the *maximum* prescribed for the crime."

*Ibid* 498 F.2d at 627.

The appellant in *Parker,* however, did not contend, as had the petitioners in *Hart* and *Hill,* that he was entitled to pre-conviction credit because he was unable to make bond due to indigency. Rather, the issues presented in *Parker* were (i) whether the Texas statutory scheme which required credit for post-conviction time spent in a mental institution,[6] but provided that the granting of credit for pre-conviction time spent in a mental institution was within the discretion of the court[7] invidiously discriminated between similar classes in contravention of the equal protection clause of the Fourteenth Amendment, and (ii) whether the disallowance of such credit violated the due process clause of the Fourteenth Amendment and the double jeopardy clause of the Fifth Amendment, made applicable to the states by the Fourteenth Amendment. *Parker v. Estelle,* supra at 627, nn. 3, 4. However, the court in *Parker* found it unnecessary to address the appellant's challenge to the constitutionality of the Texas statutory scheme or his due process and double jeopardy arguments since it rejected the assertion that credit was denied, because the jury had been urged to consider the period of pre-sentence confinement in determining punishment and had returned a sentence of only ten years for an offense which carried a maximum penalty of life. Thus, *Parker* holds that since the sentence imposed plus the time spent in pre-sentence custody totaled less than the maximum imposable sentence for the offense, then, as in federal cases, there was a presumption that the jury in imposing sentence had given credit for the period of pre-sentence custody.

■■ The rule in this circuit distilled from prior decisions, as to whether a

---

**6.** Vernon's Ann.Tex.Code Crim.P., art. 46.01(8) provides in pertinent part:

"The time a prisoner is confined in a mental hospital for treatment shall be considered time served and shall be credited to the term of his sentence . . ."

**7.** The statute in effect at the time of Parker's trial provided:

"The time a person charged with or convicted of a criminal offense is confined in a State mental hospital under this Chapter pending trial, sentencing or appeal may in the discretion of the court be credited to the term of his sentence upon subsequent sentencing or re-sentencing."

Acts of the State of Texas 1965, 59th Leg. Vol. 2, p. 317, ch. 722.

Vernon's Ann.Tex.Code Crim.P., art. 46.02(7) now provides:

"The time a person charged with a criminal offense is confined in a mental health or mental retardation facility pending trial shall be credited to the term of his sentence on subsequent sentencing or resentencing."

state prisoner is entitled to federal habeas corpus relief for credit on the service of his sentence for time spent in custody or detention prior to trial or sentencing is: While there is no absolute constitutional right to pre-sentence detention credit as such, where a person is held for a bailable offense and is unable to make bail due to indigency then if he is upon conviction sentenced to the statutory *maximum* imposable sentence for the offense he is entitled to credit for the time spent in jail prior to sentencing. See *Parker v. Estelle,* supra; *Cobb v. Bailey,* supra; *Hill v. Wainwright,* supra; *Hart v. Henderson,* supra; *Gremillion v. Henderson,* supra; *Brown v. Beto,* S.D.Tex. 1973, 359 F.Supp. 118, 121. *Accord Hook v. Arizona,* 9 Cir. 1974, 496 F.2d 1172. See also *Gelis v. State,* Fla.App.1973, 287 So.2d 368; *State v. Williams,* 1972, 262 La. 769, 264 So.2d 638; *Meeks v. State,* Mo.App.1974, 512 S.W.2d 215; *State v. Crockrell,* Mo.1971, 470 S.W.2d 507; *Curlin v. State,* Tex.Cr.App.1974, 505 S.W.2d 889; *Ex Parte Freeman,* Tex.Cr.App. 1972, 486 S.W.2d 556. The rationale of this rule is that to deny credit to indigent defendants in these circumstances would result in extending their sentences beyond the maximum prescribed for their offense, and in the imposition of a greater sentence than that determined by the state legislature as necessary to satisfy the states "penological interests and policies."[8] *Williams v. Illinois,* supra, at 242, 90 S.Ct. at 2022, 26 L.Ed.2d at 593. Applying the above test we hold that neither Jackson or Cooks has stated a claim cognizable on a federal writ of habeas corpus because, assuming that they failed to make bail because of indigency at the applicable time, both appellants upon conviction were sentenced to terms of imprisonment considerably less than the statutory maximum prescribed by the State of Alabama for their crimes.

### ACT NO. 58

The appellants' second contention with respect to pre-sentence credit is that Act No. 58 passed by the Alabama Legislature and signed into law on March 10, 1975,[9] requiring that in the future the sentence of any persons convicted of any felony or misdemeanor be credited with time spent incarcerated pending trial, must be applied retrospectively since otherwise the Act establishes an irrational classification of persons sentenced before and after its effective date, and thus, invidiously discriminates against those persons in the former class in contravention of the Fourteenth Amendment.[10] This claim is grounded on cases from the Fourth Circuit which hold that a similar statute granting credit for presentence confinement denied equal pro-

---

8. While expressing no view as to the success or merits of the State of Alabama's efforts, see *Newman v. Alabama,* M.D.Ala.1972, 349 F.Supp. 278, aff'd 5 Cir. 1974, 503 F.2d 1320, cert. denied 1975, 421 U.S. 948, 95 S.Ct. 1680, 44 L.Ed.2d 102, we note that since the city and county jails in which the appellants were held prior to sentencing have no significant rehabilitation program in contrast to the state prison system, it is not unreasonable to conclude that the state's interest in rehabilitating its prisoners might be frustrated by this court's requiring that credit be given for the time a person is held in a local jail prior to trial and sentencing. Cf. *McGinnis v. Royster,* 1973, 410 U.S. 264, 271, 93 S.Ct. 1055, 1060, 35 L.Ed.2d 282, 289.

9. Act No. 58 of the Alabama Legislature provides in pertinent part:

"Upon conviction and imprisonment for any felony or misdemeanor, the sentencing court shall order that the convicted person be credited with all of his actual time spent incarcerated pending trial for such offense.

. . . . .

"This act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law."

10. Prior to the enactment of Act No. 58 Alabama was the only state in this circuit which had no statute authorizing credit for pre-sentence confinement. In Georgia, Louisiana, Mississippi, and Texas statutes require that credit be given for time spent in pre-sentence detention, and in Florida the sentencing court has discretion to grant such credit. See Ga. Code Ann. § 27–2530; La.Stat.Ann.Code Crim.P., art. 880; Miss.Code of 1972 Ann. § 99–19–23; Vernon's Ann.Tex.Code Crim.P., art. 42.03(2); Fla.Stat.Ann. § 921.161.

tection to persons sentenced prior to the effective date of the act, and, therefore, that all prisoners have equal rights to credit for time served irrespective of whether they were sentenced before or after the enactment of the statute. See *Ham v. North Carolina*, 4 Cir. 1973, 471 F.2d 406; *Mott v. Dail*, E.D.N.C.1972, 337 F.Supp. 731, appeal dismissed, 4 Cir. 1973, 473 F.2d 908. See also *Cole v. North Carolina*, 4 Cir. 1969, 419 F.2d 127; *People v. Frye*, 1966, 35 Ill.2d 604, 221 N.E.2d 262. Because Act No. 58 was passed subsequent to the filing of these appeals the appellants did not urge this contention in their petitions filed in the district courts below, nor did they present it to the courts of Alabama. The Alabama Court of Criminal Appeals, however, considered this issue in *Ex Parte Miller*, 1975, 54 Ala.App. 590, 310 So.2d 890, and held that Act No. 58 was not retroactive. Also, in *Bryant v. Skinner*, M.D.Ala.1975, Civil No. 75–301–N, District Judge Varner has held that Act No. 58 was not intended to apply retroactively, and does not deny equal protection to prisoners sentenced prior to the effective date of the Act. We agree.

■ As discussed above, pre-sentence credit is not an absolute constitutional right. It follows that Act No. 58 simply confers a benefit, not previously provided,[11] on state prisoners sentenced after March 10, 1975. This is, of course, the result of all ameliorative legislation which goes into effect on a certain date.[12] The enactment of ameliorative legislation or the repeal of a criminal statute, however, has not been held to

"arrest or interfere" with the execution of a finalized sentence. See *Colvin v. Estelle*, 5 Cir.1975, 506 F.2d 747; *Welch v. Hudspeth*, 10 Cir. 1942, 132 F.2d 434; *United States ex rel. Cheramie v. Dutton*, 5 Cir. 1935, 74 F.2d 740, cert. denied 295 U.S. 733, 55 S.Ct. 644, 79 L.Ed. 1681; *Mirenda v. Ulibarri*, C.D.Cal. 1972, 351 F.Supp. 676; *Cherry v. Goslin*, W.D.La.1972, 350 F.Supp. 1162; Comment, *Today's Law and Yesterday's Crime: Retroactive Application of Ameliorative Criminal Legislation*, 121 U.Pa. L.Rev. 120 (1972). We find in the circumstances here present that the "factors of reliance and burden on the administration of justice", *Stovall v. Denno*, 1967, 388 U.S. 293, 300, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1205, outweigh the apparent inequity in determining a fixed cutoff date, and we hold also that the Alabama legislature's conferring only prospectively the benefits of Act No. 58 violated no constitutional guarantee. See *Jones v. Cupp*, 9 Cir. 1971, 452 F.2d 1091; *Williams v. United States*, 1964, 118 U.S.App.D.C. 255, 335 F.2d 290; *Graham v. Thompson*, 10 Cir. 1957, 246 F.2d 805; *Comerford v. Commonwealth*, 1 Cir. 1956, 233 F.2d 294, cert. denied 352 U.S. 899, 77 S.Ct. 141, 1 L.Ed.2d 90.

## POST SENTENCE JAIL TIME

■ Under Alabama law a convicted felon is given the option of taking either a "non-working" appeal under Title 15, Section 372, Code of Alabama (Recomp. 1958) or a "working" appeal under Title 15, Section 373, Code of Alabama (Re-

---

11. Prior to the enactment of Act No. 58 the Alabama courts had consistently held that pretrial detention was not punishment, and that a prisoner was obliged to serve the full term of his sentence without regard to time spent in jail prior to sentencing. *Ryan v. State*, Ala. 1894, 100 Ala. 105, 14 So. 766; *Bailey v. State*, Ala.App.1975, 315 So.2d 136, 137; *Broadnax v. State*, Ala.App.1975, 310 So.2d 265, 270; *Teeple v. State*, Ala.App.1975, 308 So.2d 717; *Robinson v. State*, Ala.App.1971, 47 Ala.App. 51, 249 So.2d 872.

12. In *Comerford v. Commonwealth*, 1 Cir. 1956, 233 F.2d 294, cert. denied 352 U.S. 899,

77 S.Ct. 141, 1 L.Ed.2d 90, the First Circuit in addressing a similar contention stated:

"The same situation might arise when a legislature prospectively reduced the maximum penalty for a crime, for then a prisoner sentenced to the maximum penalty before the effective date of the act would serve a longer imprisonment than one sentenced to the maximum term thereafter. Yet we are not aware of any violation of the constitutional rights of either group of prisoners in that situation, nor in the one before us . . . ."

233 F.2d at 295.

comp.1958).[13] Pursuant to Section 372 when a person convicted of an offense informs the trial court of his intention to appeal the court enters judgment but suspends execution of the sentence during the pendency of the appeal. While the appeal is pending the appellant has a right to bail, unless he was sentenced to more than 20 years' imprisonment. Persons unable to gain release during appeal remain in custody in the county jail, and do not receive credit toward the service of the sentence imposed. An appellant, however, pursuant to Section 373 has the option, at any time before the trial transcript is forwarded to the appellate court, to waive suspension of sentence and begin service of his sentence in the state penitentiary. Whether a "non-working" or a "working" appeal is elected does not affect the appellate process.

Although he did not elect to take a "working" appeal, Cooks contends nonetheless that he is entitled to credit for the time he was held in post sentence custody pending appeal in the Mobile County Jail and in the facility at Mt. Meigs. The claim is that the denial of such credit impedes access to the courts in violation of the due process clause of the Fourteenth Amendment, constitutes invidious discrimination on the basis of wealth in violation of the equal protection clause of the Fourteenth Amendment, and constitutes multiple punishments for the same offense in violation of the Fifth Amendment as it applies to the states through the Fourteenth Amendment. Cooks principally relies in this respect upon *Robinson v. Beto*, 5 Cir. 1970, 426 F.2d 797, and *Hart v. Henderson*, supra, wherein this court held the Texas and Louisiana mandatory suspension of execution statutes unconstitutional under *North Carolina v. Pearce*, 1969, 395 U.S. 711, 89 S.Ct. 2089, 23 L.Ed.2d 656.

Subsequent to the filing of this appeal, however, this court in *Gamble v. Alabama*, 5 Cir. 1975, 509 F.2d 95, cert. denied 423 U.S. 924, 96 S.Ct. 267, 46 L.Ed.2d 250, rejected the contention that *Hart v. Henderson*, supra, and *Robinson v. Beto*, supra, control the validity of the Alabama statutory scheme, and held that Section 373 was constitutional. Judge Godbold stated for the court in *Gamble*:

"The statutes scrutinized and ultimately held invalid in *Hart* and *Robinson* automatically stayed execution of sentence during pendency of appeal. An automatic stay would necessarily require a prisoner considering an appeal to weigh the doubt of success against the certainty of extended incarceration upon denial of appeal. The natural effect of these automatic stay statutes would be to inhibit the taking of appeals.

The Alabama scheme is, on its face, dissimilar from the Louisiana and Texas automatic suspension statutes. In Alabama stay of sentence execution is avoidable, and avoidance results in no adverse effect to the prisoner taking appeal. Appellee [Gamble] has not

---

13. Title 15, Section 372, Code of Ala. (Recomp. 1958) provides in part:

"When any question of law is reserved in case of a felony, and it shall be made known to the court that the defendant desires to take an appeal to the supreme court or to the court of appeals, judgment must be rendered against the defendant but execution thereof must be suspended pending the appeal and the defendant held in custody, but if the sentence is for a term not exceeding twenty years the judge must direct the clerk of the court in which the conviction is had to admit the defendant to bail in a sum to be fixed by the judge . . . .."

Title 15, Section 373, Code of Ala. (Recomp. 1958) provides:

"In all cases where there is judgment suspending sentence, at any time before the transcript has been forwarded to the clerk of the appellate court, the defendant in person, or by his attorney, may waive the benefit of the suspended sentence by filing in the office of the clerk of the court in which the case was tried, a statement in writing to that effect, signed by himself or his attorney of record, and the clerk must then enter the fact and date of such waiver of suspension of sentence upon the margin of the record of judgment and shall report said convict to the director of the department of corrections and institutions, as in cases where there is no judgment or suspension of sentence; but such waiver of suspension shall not affect the appeal."

contended that despite facial fairness the Alabama statutes in fact operate to curb the taking of appeals. In the absence of such a contention and supportive evidence of a 'chilling' effect, we find the Alabama optional stay of sentence scheme fulfills the due process requirements of *Pearce.*"

*Gamble v. Alabama,* supra, at 97.

Relying on *Dimmick v. Tompkins,* 1904, 194 U.S. 540, 24 S.Ct. 780, 48 L.Ed. 1110, the decision in *Gamble* also rejected the contention that credit must be granted for jail time served pending appeal because the Supreme Court in *North Carolina v. Pearce,* supra, found that the double jeopardy clause precludes multiple punishments for a single offense. The Supreme Court held in *Dimmick* that the petitioner, a federal prisoner, was not entitled to credit on his two year sentence for the 18-month period he was held in a county jail rather than in the penitentiary during the pendency of his appeal. Finding that Dimmick's sentence specified "imprisonment in . . . prison", and that he had sought detention in jail rather than in the penitentiary during the appeal, the Court stated that he could not "take advantage of his own action . . . to thereby shorten the term of imprisonment in the state prison . . . . To hold otherwise would be inconsistent with the general principle that a person shall not be permitted to take advantage of any act of another which was *committed upon his request,* or was *caused by his own conduct.*" *Dimmick v. Tompkins,* supra, at 548–49, 24 S.Ct. at 782, 48

L.Ed.2d at 1114 (emphasis added). In *Gamble* we further found that the "appellee alone determined the locus of his detention and had the power to compel his own transfer to prison. He failed to exercise that power and cannot now complain of the result." *Gamble v. Alabama,* supra, at 98.

Counsel for appellant asserts that *Dimmick* and *Gamble* are distinguishable from the present case since the record here does not demonstrate that Cooks voluntarily and knowingly waived the right to commence service of his sentence in the state prison, nor that he was informed of his right to choose a "working appeal". Cf. *Allen v. Henderson,* 5 Cir. 1970, 434 F.2d 26. Statements by Cooks contained in *pro se* petitions and motions filed in the court below and in the Circuit Court of Mobile County refute this. They indicate, rather, that although informed of the option of taking a "working" appeal he chose, over the advice of his trial counsel, to take a "non working" or "standing" appeal.[14] Cooks also seeks to distinguish *Gamble* from the present case since Cooks, unlike the appellee in *Gamble,* was transferred from the county jail to the Medical and Diagnostic Center at Mt. Meigs, Alabama, three weeks after conviction, and, therefore, was not given the benefits of local confinement. This contention is similarly without merit in light of the fact that appellant's transfer to the facility at Mt. Meigs[15] "was caused by his own conduct", *Dimmick,* supra, while confined in the county jail.[16] It does not lie in Cooks' mouth now to complain

---

14. "Petitioner [Cooks] taken (as a right) a 'standing appeal' with stipulations that he were not to go to prison until the 'outcome' of his appeal."

Record at 1.
"Upon sentencing, Jasper Lee Cooks asked for/was granted a standing appeal . . ."

Record at 13.
"I chosen a standing appeal because my life had been-and is-threatened at Atmore and Holman Prison. My lawyer was informed at this. He tried several weeks, although I had told him my problem to get me to change my appeal to a working appeal!"
Record at 41 (underlining in original).

15. The Medical and Diagnostic Center at Mt. Meigs although part of the Alabama prison system is a minimum security facility, and also serves as the receiving center for new inmates where they are classified and assigned to either Atmore, Holman, Draper, or Tutwiler Prisons. Cooks was transferred from Mt. Meigs to the penitentiary at Holman, Alabama on June 28, 1973.

16. The transfer of Cooks to the facility at Mt. Meigs was the result of a motion for Commitment for Safekeeping filed by the Chief Assistant District Attorney. The motion averred that "the defendant, Jasper Lee Cooks, alias "Tiny" Cooks, is a danger and threat to all those who have come in contact with him dur-

since his own actions, like those of the petitioner in *Dimmick* and the appellee in *Gamble*, "resulted in his incarcerati n in the county jail [and at Mt. Meigs] and the resultant suspension of sentence execution". *Gamble v. Alabama*, supra, at 98.

The judgments appealed from are each AFFIRMED.

GODBOLD, Circuit Judge (dissenting):

The majority concludes that Jackson and Cooks, indigents who were confined prior to sentence because of their inability to make bail, are not constitutionally entitled to credit for time served. It also concludes that Cooks is not entitled to credit for the time he spent in jail while he was appealing his conviction. In making both of these rulings, the majority has failed to come to grips with the appellants' contention that denial of credit is invidious discrimination on the basis of wealth. I would uphold that contention in both contexts, and therefore I dissent.

### A. Pre-sentence detention credit

My brothers recognize that their decision on pre-sentence detention credit is contrary to rulings in other circuits,[1] but they say that "binding prior decisions of this court" oblige them to decide as they do. They trace this circuit's "rule" back to the statement in *Gremillion v. Henderson*, 425 F.2d 1293 (C.A.5, 1970), that "there is no federal constitutional right to credit for time served prior to sentence." I disagree. The quoted language, even if it is taken as the true *ratio decidendi* of the case (a proposition which is open to doubt),[2] simply does not dispose of the wealth discrimination argument tendered by Jackson and Cooks. Appellants' point is not that credit is a substantive constitutional right like the

right to counsel or the right to confront witnesses. Rather their point is that the state is extending their confinement on a basis that is invidiously discriminatory. Unequal treatment is the heart of their claims. *Gremillion* did not address such a contention; indeed, we observed in a footnote that Louisiana's statute did not "impose an arbitrary classification." Whether Alabama's practices have done so is the very question at issue here.

In my view the guiding precedent here is not *Gremillion* but *Hart v. Henderson*, 449 F.2d 183 (C.A.5, 1971). We held in *Hart* that "the inability of an indigent criminal defendant to make bond should not result in extending the duration of his imprisonment beyond the statutory maximum." 449 F.2d at 185. This result was reached on wealth-discrimination grounds, with particular reference to the Supreme Court's decisions in *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970), and *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). The petitioner in *Hart* had been sentenced to the statutory maximum term, and our decision met only the factual situation before us. In a case involving prisoners sentenced to less than the maximum term, however, *Hart* should govern unless there is some rational justification for retaining the maximum-term limitation.

Before discussing why I believe that no such justification exists, I should stress that the later cases Judge Simpson cites have left this question open. In *Hill v. Wainwright*, 465 F.2d 414 (C.A.5, 1972), an indigent prisoner sentenced to a maximum term was before us, and we naturally followed *Hart*. We pointed out that the appellant in *Gremillion* had not received a maximum sentence, but so far as appears we were only trying to show that *Hart* was the precedent with the closest factual resemblance to the

---

ing his confinement in the Mobile County Jail . . . ." and "is believed to be a danger to himself and to his cell mates . . . ." Record at 30–31.

1. *See King v. Wyrick*, 516 F.2d 321 (C.A.8, 1975); *Ham v. North Carolina*, 471 F.2d 406 (C.A.4, 1971) (semble); *Monsour v. Gray*, 375

F.Supp. 786 (E.D.Wis.1973); *White v. Gilligan*, 351 F.Supp. 1012 (S.D.Ohio 1972) (three-judge court).

2. A portion of the stated rationale of *Gremillion* exposes a significant factual distinction between that case and the instant case. *See* note 8 *infra*.

case at bar. We did not say or even strongly imply that the duration of a prisoner's sentence would ultimately prove to be critical. In *Cobb v. Bailey,* 469 F.2d 1068 (C.A.5, 1972), the only Alabama case in this series, we went considerably out of our way to point out that *Cobb* had not alleged any facts that might trigger the equal protection analysis undertaken in *Hart.* We made it clear that if *Cobb* had not "fail[ed] to allege that after the Alabama Courts allowed bail she was discriminatorily denied the opportunity to make it," the conclusion that we were "bound by our decision in *Gremillion*" would not follow. Moreover, in a dictum which today's majority overlooks, we specifically recognized that the *Gremillion* appellant's less-than-maximum sentence was not a material consideration.[3] Finally, *Parker v. Estelle,* 498 F.2d 625 (C.A.5, 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975), was decided on the basis of a "presumption" that credit had indeed been given, and we noted in passing that "no unconstitutional basis" for denying credit had been alleged. In short, it is abundantly clear that the issues in this case cannot be evaded on *stare decisis* grounds.

I can think of only three arguments that might be advanced to support limiting *Hart* to prisoners with maximum sentences, and none is persuasive.

1. According to Judge Simpson, bailable indigent defendants are entitled to credit only when they have been sentenced to the statutory maximum, because only in that circumstance would denial of credit result "in the imposition of a greater sentence than that determined by the *state legislature* as necessary to satisfy the states 'penological interests and policies'" (emphasis added). This is too constricted a view. The de-

termination of how much confinement for a particular offense will serve the state's penological interests is made in the first instance by the legislature, which imposes outer limits. But it is made in the second instance by judges and juries.

In each of the two cases before us, we do not know what factors the jury weighed in deciding on a proper sentence. We can rest assured, however, that it did not take into consideration credit for pre-sentence detention. As Judge Simpson expressly recognizes, Alabama did not at that time authorize such credit to be given. There is no reason to think that Jackson's jury even knew that he had already been incarcerated for nearly two years. Nor can we assume that Cooks' jury knew that he had been incarcerated for over nine months.[4] The majority is not concerned that denial of the relief appellants seek will result in the imposition of greater sentences than those determined by *these two juries* "as necessary to satisfy the states 'penological interests and policies.'" If there is some reason we should give more deference to the legislature's determination than to the jury's, we are not told what the reason is.[5]

2. In its discussion of *Parker v. Estelle, supra,* the majority appears to derive comfort from the idea that unless the pre-sentence detention time plus the trial court's sentence exceeds the statutory maximum penalty for the offense, reviewing courts must conclusively presume that the trial court did give credit for time served. In federal criminal cases we have taken this "conclusive presumption" approach since *Bryans v. Blackwell,* 387 F.2d 764 (C.A.5), *cert. denied,* 391 U.S. 907, 88 S.Ct. 1658, 20 L.Ed.2d 421 (1967). In *Bryans* we adopted the view of the District of Columbia

---

3. "It is now urged that *Gremillion* is distinguishable from the present case because he had been sentenced to less than the maximum term. The Court, however, intimated no such basis for its declaration." 469 F.2d at 1070.

4. Cooks' brief declares that the jury did not have this information. The state does not deny this statement.

5. Certainly *Williams v. Illinois, supra,* does not support such deference. It was a legislatively enacted scheme for "working off" fines that *Williams* struck down.

Circuit that allowing individual defendants to offer contrary evidence would cause enormous administrative inconvenience.[6]

Contrary to what the majority implies, we have never held that the giving of credit must be conclusively presumed irrespective of the statutory framework within which a particular sentence was imposed. In *Gremillion* we expressly declined to decide whether the presumption should apply. And in *Parker* we embraced no "conclusive" presumption. On the contrary, we weighed the evidence as to whether credit had been given. Both of these cases had arisen in states where pre-sentence detention credit was within the court's discretion, and where, therefore, some kind of presumption might be appropriate. There is no reason to have such a presumption respecting Alabama prisoners, however, because Alabama has traditionally denied credit to all defendants. Of course, the uniformity of this state's practice completely undermines the argument based on the alleged inconvenience of investigating whether credit was given in individual cases.

3. Finally, it may be that *Hart* restricted its holding to prisoners sentenced to maximum terms simply because *Williams v. Illinois, supra,* had contained a roughly corresponding limitation. As I have said, the *Hart* court properly limited its holding to the facts before it. But, now that the question is squarely presented, we should recognize that the logic of *Williams* is not limited to maximum sentences. In *Tate v. Short, supra,* seven members of the Supreme Court expressly rejected the notion that the *Williams* doctrine always depends upon an indigent's being held in custody beyond a statutory maximum period: " 'The same constitutional defect condemned in *Williams* also inheres in jailing an indigent for failing to make immediate payment of any fine . . . whether or not the jail term of the indigent extends beyond the maximum term

that may be imposed on a person willing and able to pay a fine.' " 401 U.S. at 399, 91 S.Ct. at 671, 28 L.Ed.2d at 133. Here, although we are concerned with an indigent's inability to pay bail rather than a fine, *Tate*'s admonition is clearly pertinent. Yet the majority does not attempt to explain why the duration of the sentence should make any difference in applying *Williams* to the facts of this case.

When *Williams* is analyzed one sees that the factors which originally prompted the Court to confine its rule narrowly have no force here. In that case an Illinois statute allowed a court to impose both (a) a jail term and (b) a fine that would be replaced by an extra term in jail if the defendant could not pay. Williams had received a maximum jail sentence and a fine, but since he was an indigent he was ordered to remain in prison for a period longer than his jail sentence until he had "worked off" the fine at the rate of five dollars per day. The Supreme Court found that "the Illinois statute as applied to Williams works an invidious discrimination solely because he is unable to pay the fine." 399 U.S. at 242, 90 S.Ct. at 2023, 26 L.Ed.2d at 593. Accordingly, the Court held "that a State may not constitutionally imprison beyond the maximum duration fixed by statute a defendant who is financially unable to pay a fine." 399 U.S. at 243, 90 S.Ct. at 2023, 26 L.Ed.2d at 594.

Why did the Court limit its holding to prisoners serving maximum jail sentences? As I read *Williams,* the Court was trying to foreclose future suits charging that equal protection was violated because an individual judge had imposed an excessive sentence on account of the accused's indigency. The Court declared that it would not inquire into whether a sentencing judge's exercise of discretion was in some sense tainted by allegedly invidious wealth discrimination.[7] Limiting the holding of

---

6. *See Stapf v. U. S.,* 125 U.S.App.D.C. 100, 367 F.2d 326 (1966).

7. The Court's position was consistent with the resistance it has always shown to appellate review of criminal sentences on the merits.

the case circumvented any threat to sentencing prerogatives, because by hypothesis courts had no discretion to sentence defendants to remain in jail beyond the statutory maximum.

Such reasoning does not support a "statutory maximum" limitation in the instant case. Ordering the state to allow credit for pre-sentence detention would not affront sentencing judges' or juries' "wide discretion in the exceedingly difficult task of determining the appropriate punishment in the countless variety of situations that appear," *id.,* because the juries in these two cases did not have any discretion to allow credit and from all appearances did not do so.[8] At the same time, the basic similarity between this case and *Williams* stares us in the face: Alabama's procedure, like Illinois', singles out indigents for the burden of extra-long confinement. They experi-

ence this burden whether or not they are ultimately sentenced to the statutory maximum. See *King v. Wyrick,* 516 F.2d 321, 323 & n. 3 (C.A.8, 1975).

The majority has failed to distinguish this case from *Hart* in a convincing manner. Certainly the state may take appropriate measures to secure an accused's presence at trial. If it cannot obtain sufficient monetary security, pretrial confinement is an appropriate means to this end. But I see no state interest that is served by denying credit to persons who experienced that confinement solely because they could not make bail. As a matter of fact, during oral argument we invited counsel for Alabama to suggest such a possible state interest. He declined to do so, resting instead on the supposed absence of a prima facie constitutional right.[9] From all that appears, therefore, the discrimina-

*Cf. Dorszynski v. U. S.,* 418 U.S. 424, 440–41, 94 S.Ct. 3042, 3051, 41 L.Ed.2d 855, 867 (1974).

**8.** Here the difference between this case and *Gremillion* becomes apparent. We pointed out in *Gremillion* that under then-prevailing Louisiana law the sentencing judge had complete discretion to grant or deny pre-sentence detention credit. It seems that the opinion rested on two premises: (a) Both rich and poor were equally subject to this discretion. Hence we could properly say there (but not here) that the state's procedures did not "impose an arbitrary classification." 425 F.2d at 1294 n. 4. (b) A particular *exercise* of sentencing discretion is ordinarily not open to constitutional attack. This is precisely what *Williams* declared a short while afterwards, but it has nothing to do with the instant case, since discretion is not implicated here.

At the risk of belaboring the point, I submit that *Gremillion* is distinguishable from this case. The majority decides otherwise only because it has seized on an isolated phrase therein—"no federal constitutional right"—instead of analyzing the opinion's reasoning.

**9.** The majority claims in a footnote that "it is not unreasonable to conclude" that reducing prisoners' terms in the penitentiary might frustrate the state's rehabilitative efforts, since the penitentiaries have rehabilitation programs and the jails have none. With deference I must point out that the majority is indulging in sheer speculation. At no time in these proceedings has the state suggested that it denies pre-sentence detention credit for the sake of rehabilitation. The majority's argument there-

fore fails the equal protection test set forth in the very case Judge Simpson invokes: we must "inquire only whether the challenged distinction rationally furthers some legitimate, *articulated* state purpose." *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282, 289 (1973) (emphasis added). I also wonder how this supposed state interest could make a decisive difference here if it was not decisive in *Hart;* the impact of credit on rehabilitative efforts is surely the same for prisoners who are serving maximum sentences and prisoners who are not.

The failure of the state to make the argument that Judge Simpson makes for it is perhaps understandable. A federal district court closer to the situation then we are has recently found that the Alabama prison system has "very few rehabilitation programs," and that even these "are totally inadequate to provide reasonable opportunities for rehabilitation—or even to prevent physical and mental deterioration—of most of the prison population." *James v. Wallace,* 406 F.Supp. 319, 326 (M.D. Ala.1976). I am not trying to prejudge the merits of *James.* I merely desire to point out that if we adjudicate cases like this through guesswork we run a considerable risk of guessing wrong.

Applying the *McGinnis* test once more, I should mention one state interest that is indeed "articulated" but does not seem to qualify as "legitimate." The historic basis for Alabama's refusal to allow pre-sentence detention credit was stated 80 years ago in *Ryan v. State,* 100 Ala. 105, 14 So. 766 (1894): confinement before trial is not "punishment". For my part, I am not persuaded that pretrial con-

tion upheld today is an utterly invidious one, favoring the wealthy over the indigent without any real justification. Our Constitution demands a more generous outlook. *Williams v. Illinois, supra; Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956).

### B. Post-sentence detention credit

I now turn more briefly to the issue of post-sentence detention credit. The majority states that *Gamble v. Alabama,* 509 F.2d 95 (C.A.5), *cert. denied,* 423 U.S. 924, 96 S.Ct. 267, 46 L.Ed.2d 250 (1975), is controlling here. *Gamble* was, however, a narrowly written opinion. We interpreted *Dimmick v. Tompkins,* 194 U.S. 540, 24 S.Ct. 780, 48 L.Ed. 1110 (1904), to mean that if a prisoner has, by electing to remain in a county jail, chosen to delay the execution of his sentence pending appeal, he has only himself to blame if he is then required to serve his full sentence in prison. This was a sort of equitable estoppel theory. Its narrow compass is clearly demonstrated by the fact that we did accord Gamble credit for two periods of post-sentence time he had spent in the county jail—the time between when he was convicted and when he filed his appeal, and also the time between when his conviction was affirmed and when the state transferred him to prison—since these periods of confinement had not resulted from his own choice.

It may be true that Cooks, like Gamble, chose his locus of detention, and if so he cannot now protest about the consequences of his choice. It is also true, however, that Cooks could have avoided being detained at all if he had had the financial resources needed to post bond. This was not true of Gamble, who was

not legally eligible for bail.[10] *Gamble* therefore could not and did not dispose of the wealth discrimination argument tendered by Cooks here.

I think my discussion above amply demonstrates that the state's failure to allow credit to bailable indigents for jail time they serve while their appeals are pending is a violation of the equal protection clause. There is no constitutional bar to Alabama's confining defendants who are unable to post bail until an appellate decision is reached. By withholding credit, however, the state requires bailable indigents to serve longer sentences than they have received in court, while other bailable convicts can retain their freedom temporarily. Absent a "legitimate, articulated state purpose" for this discrimination, see note 9 *supra,* it is unconstitutional.

---

finement of nine months, let alone two years, can be casually dismissed as merely one of the costs of being bound over for trial on criminal charges. Be that as it may, *Hart* again forecloses any contention that this state interest is substantial enough to withstand the wealth discrimination argument raised here.

**10.** He had been sentenced to a 30-year term, and he elected a "direct" appeal under Tit. 15, Code of Ala. § 372 (Recomp.1958). That provision, however, does not authorize bail for those whose sentence exceeds 20 years. All these facts are stated in the *Gamble* opinion, 509 F.2d at 96.